THIRD DIVISION

July 25, 2001

No. 1--00--1366

JUAN ANDRES PINILLA, as Administrator of the ESTATE OF JUAN M. PINILLA OSORIO, Deceased, PABLO GONZALEZ BERGEZ, HECTOR LANFRANCO, and MARTIN CAMPBELL, 

Plaintiffs-Appellants,

v.

HARZA ENGINEERING COMPANY, 

Defendant-Appellee. 

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the 

Circuit Court of

Cook County.

Honorable

Thomas P. Quinn, 

Judge Presiding.

JUSTICE BURKE delivered the opinion of the court:

Plaintiffs Juan Andres Pinilla, as administrator of the Estate of Juan M. Pinilla Osorio, deceased, Pablo Gonzalez Bergez, Hector Lanfranco, and Martin Campbell appeal from an order of the circuit court granting defendant Harza Engineering Company's motion to dismiss plaintiffs' petition for registration of a foreign judgment and petition to revive judgment pursuant to sections 2--619 and 2--615 of the Code of Civil Procedure (Code) (735 ILCS 5/2--619, 2--615 (West 1998)).  On appeal, plaintiffs contend that the statute of limitations set forth in section 12--108(a) of the Code (735 ILCS 5/12--108(a) (West 1998)) does not apply to registration of foreign judgments; that the 20-year revival period set forth in section 13--218 of the Code (735 ILCS 5/13--218 (West 1998)) should be applied to foreign judgments; that their revival petition was not premature; and that the documents attached to their petition for registration were properly authenticated judgments.  For the reasons set forth below, we reverse and remand.

STATEMENT OF FACTS

Plaintiffs seek enforcement of two judgments for attorney fees ordered payable to them from defendant in an action in Argentina in which plaintiffs represented the Argentina plaintiffs against defendant.  On September 27, 1990, an Argentina trial court entered judgment against defendant in favor of plaintiffs.  On March 21, 1991, the court of appeals of Argentina modified the judgment, reducing the amount of attorney fees awarded to plaintiffs.  

On December 3, 1999, plaintiffs filed a "Notice of Filing Petition to Register" in the circuit court of Cook County.  On December 30, 1999, plaintiffs filed a "Petition for Revival of Judgment" (revival petition), seeking to revive the Argentina judgments.  On January 3, 2000, defendant objected to plaintiffs' December 3 notice of filing, arguing that plaintiffs failed to attach a copy of a "Petition to Register Foreign Judgment."  On January 11, plaintiffs filed a motion for leave to file 
instanter
 a petition to register foreign judgment, indicating that they had inadvertently failed to attach a copy of the petition to their notice of filing.  The trial court granted this motion and, on January 20, plaintiffs filed a "Petition to Register Foreign Judgment" (registration petition or petition to register), seeking to register the two Argentina judgments.  Plaintiffs attached two documents in Spanish and an unofficial English translation of each.  These documents contain various stamps, seals, and attestations.

On February 10, 2000, defendant filed a motion to dismiss both petitions.  It sought to dismiss the registration petition pursuant to section 2--619(a)(9) of the Code, arguing that the petition was barred by the seven-year statute of limitations period set forth in section 12--108(a) of the Code.
(footnote: 1)  It also sought to dismiss the registration petition pursuant to section 2--615 of the Code based on plaintiffs failure to attach duly authenticated copies of the foreign judgments to the petition; plaintiffs only attached what appeared to be two affidavits which included excerpts from the court records and proceedings.  With respect to the revival petition, defendant sought to dismiss this petition pursuant to section 2--619(a)(9) of the Code, arguing that plaintiffs had no judgment to revive because they had no valid enforceable Illinois judgment and, therefore,  plaintiffs' petition was premature.  

In its memorandum in support of its motion to dismiss, defendant alleged that this was plaintiffs' seventh attempt in over six years to obtain recognition and enforcement of the Argentina judgments.  In this regard, plaintiffs first filed an action against defendant in the federal district court in September 1993, seeking to recognize and enforce the Argentina judgments.  After being allowed the opportunity to amend their complaint, the district court dismissed plaintiffs' second amended complaint, finding that plaintiffs had simply attached a letter rogatory to their complaint, which was not enforceable, and that plaintiffs had never provided the court with a copy of the judgments they sought to enforce.

In August 1995, plaintiffs again filed a complaint against defendant, this time in the circuit court of Cook County.  The circuit court dismissed the complaint because plaintiffs attached letters rogatory, which were not judicially enforceable, and failed to attach a copy of the judgments they sought to enforce.  Plaintiffs amended their complaint on two occasions, adding English translations of the Spanish documents they had attached to their complaint.  The trial court dismissed plaintiffs' second amended complaint on June 12, 1996, finding that plaintiffs still had failed to attach a copy of the judgments they sought to enforce to their complaint.  

On March 24, 2000, the trial court dismissed plaintiffs' petitions in the present case pursuant to section 2--619 and section 2--615 of the Code.  With respect to the registration petition, the court concluded that plaintiffs failed to file their petition within the seven-year statute of limitations period and, therefore, the petition was barred.  The court dismissed the revival petition, finding that it was premature since plaintiffs did not yet have an Illinois judgment to enforce, 
e.g.
, plaintiffs had no right to enforce their judgments until they were recognized in Illinois.  The trial court additionally stated that defendant's motion pursuant to section 2--615 had merit and dismissed both of plaintiffs' petitions with prejudice on that basis.  This appeal followed.

ANALYSIS

"A section 2--619 motion to dismiss affords a defendant a means of obtaining a summary disposition when the plaintiff's claim can be defeated as a matter of law or on the basis of easily proved issues of fact."  
McGee v. State Farm Fire & Casualty Co.
, 315 Ill. App. 3d 673, 680, 734 N.E.2d 144 (2000).  A motion pursuant to section 2--619 admits as true all well-pleaded facts and inferences to be drawn from the facts.  
McGee
, 315 Ill. App. 3d at 680.  A motion to dismiss pursuant to section 2--619(a)(5) permits dismissal when "the action was not commenced within the time limited by law," and a motion pursuant to section 2--619(a)(9) permits dismissal when "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim."  735 ILCS 5/2--619(a)(5), (9) (West 1998).  We review the trial court's decision 
de novo
.  
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116, 619 N.E.2d 732 (1993).

The enforcement of judgments rendered by courts outside the State of Illinois is governed under two uniform statutes:
(footnote: 2) the Uniform Foreign Money-Judgments Recognition Act (Recognition Act) (735 ILCS 5/12--618 
et seq.
 (West 1998)) and the Uniform Enforcement of Foreign Judgments Act (Enforcement Act) (735 ILCS 5/12--650 
et seq.
 (West 1998)).  The Recognition Act recognizes judgments of a foreign state, which is "any governmental unit other than the United States, or any state."  735 ILCS 5/12--618(a) (West 1998).  The Recognition Act provides that as long as a foreign judgment is "final and conclusive and enforceable where rendered" (735 ILCS 5/12--619 (West 1998)), it "is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit" (735 ILCS 5/12--620 (West 1998)).  The Enforcement Act governs enforcement of foreign judgments of "a court of the United States or of any other court which is entitled to full faith and credit in this State."  735 ILCS 5/12--651 (West 1998).

The Recognition Act serves the purpose only of allowing a United States court a means to recognize a foreign judgment.  The Recognition Act does not establish the procedure to file or enforce a foreign judgment.  See 9 Am. Jur. Proof of Facts 3d, 
Invalidity of Judgment of Court of Foreign Country
, 
§4, at 703 (1990).  The Recognition Act does provide, however, that once a foreign judgment is recognized, it is to be enforced in the same manner as the judgment of a sister state.  735 ILCS 5/12--620 (West 1998).  Thus, the methods to file and enforce a foreign judgment would be those detailed in the Enforcement Act.
(footnote: 3)  See Uniform Foreign Money Judgments Recognition Act, §3 comment, 13 U.L.A. 261, 265 (Master ed. 1986).  

Section 12--652 of the Enforcement Act authorizes the filing of a foreign judgment and the judgment's resultant status after filing.  It provides, in relevant part:

"A copy of any foreign judgment authenticated in accordance with the acts of Congress or the statutes of this state may be filed in the office of the circuit clerk for any county of this State.  The clerk shall treat the foreign judgment in the same manner as a judgment of the circuit court for any county of this State.  A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a circuit court for any county of this State and may be enforced and satisfied in like manner."  735 ILCS 5/12--652 (West 1998).

Plaintiffs contend that the seven-year limitations period set forth in section 12--108 of the Code does not apply to 
registration
 of a judgment, but rather only to 
enforcement
 of a judgment.  Plaintiffs maintain that there is nothing in section 12--108 to support a conclusion that the section applies to registration.  According to plaintiffs, the trial court failed to recognize the distinction between registering a judgment and enforcing a judgment.  Plaintiffs maintain that they seek only to perform the ministerial task of registering their judgment; they are not seeking to enforce it. 

Defendant contends that section 12--108's seven-year limitations period applies to both registration and enforcement, and because plaintiffs did not file their petition for registration within seven years of the judgment, their petition is barred. 

Section 12--108 of the Code provides:

"Except as herein provided, no judgment shall be enforced after the expiration of 7 years from the time the same is rendered, except upon the revival of the same by a proceeding provided by Section 2--1601 [and section 13--218] of this Act ***."  735 ILCS 5/12--108 (West 1998).

In 
Johnson v. Johnson
, 267 Ill. App. 3d 253, 642 N.E.2d 190 (1994)
, 
a Florida court entered judgment against the defendant on January 17, 1986.  Sometime thereafter, the plaintiff attempted to register the judgment in Illinois.
(footnote: 4)  The trial court allowed the registration over the defendant's objection that the claim was barred by the general five-year statute of limitations period.  
Johnson
, 267 Ill. App. 3d at 254.  The issue before the 
Johnson
 court was "whether a foreign judgment must be registered in Illinois within five years of its entry [pursuant to section 13--205 of the Code (735 ILCS 5/13--205 (West 1998))]."  
Johnson
, 267 Ill. App. 3d at 254.  The 
Johnson
 court noted that prior to September 1, 1991, the general five-year statute of limitations period applied to enrollment and enforcement of foreign judgments.  
Johnson
, 267 Ill. App. 3d at 254.  However, effective September 1, 1991, Illinois adopted the Enforcement Act, including paragraph 12--652.  The court concluded that "a foreign judgment filed under this section [12--652] is treated as an Illinois judgment.  As such, the [seven-year statute of] limitations period for 
enforcing
 a judgment applies, rather than the five-year period for other actions."  (Emphasis added.)  
Johnson
, 267 Ill. App. 3d at 255.  The 
Johnson
 court then stated that while Illinois applies its own statute of limitations to enforcement of foreign judgments,

"there is a question regarding 
when that limitations period begins to run
: from the 
date of rendition of the judgment or from the date it is registered
.  We need not answer this question because petitioner has yet to seek enforcement of the Florida judgment, and respondent's appeal is limited to the issue of whether the judgment was properly registered."  (Emphasis added.)  
Johnson
, 267 Ill. App. 3d at 255.

The court concluded that the trial court did not err in allowing registration of the judgment.  
Johnson
, 267 Ill. App. 3d at 255.

We conclude, based on the above emphasized language, that the 
Johnson
 court did not hold that a statute of limitations, or specifically the seven year statute of limitations, applies to registration of a foreign judgment.  The  
Johnson
 court only held that the seven-year statute of limitations period applied to enforcement of judgments.  If the court had held that the statute of limitations applied to registration, there would be no reason for the court to state that a question would exist, if the petitioner was seeking 
enforcement
 of the judgment, as to whether the statute of limitations begins to run from the date of registration of the judgment or from the date of rendition of the judgment since, if the statute of limitations expired prior to the date of registration, it could not begin to run from the date of registration.  While we note that the court in 
La Societe Anonyme Goro v. Conveyor Accessories, Inc.
, 286 Ill. App. 3d 867, 677 N.E.2d 30 (1997), relying on 
Johnson
, stated "that the 1991 amendment to the Code adopting the Foreign Judgments Act [Enforcement Act] rendered the seven-year limitations period for an Illinois judgment applicable to the 
registration
 and 
enforcement
 of foreign-country judgments as well as sister-state judgments,"  ((emphasis added) 
Conveyor Accessories
, 286 Ill. App. 3d at 871), we do not agree with the 
Conveyor Accessories
 conclusion that a statute of limitations is applicable to registration of a foreign judgment.  We agree with plaintiffs that the 
Conveyor Accessories
 court misread 
Johnson
 to hold that the statute of limitations was applicable to registration as well as to enforcement.  As discussed above, 
Johnson
 did not so hold.  In addition, the 
Conveyor Accessories
 court did not address the statutory difference, as more fully discussed below, between the original Enforcement Act and the current Enforcement Act.

We initially note that there is no provision under the current Enforcement Act for filing a "petition to register a foreign judgment."  While the former act contained a specific provision requiring the filing of a petition to register (Ill. Rev. Stat. 1989, ch. 110, par. 12--602), and requirements for the contents and notice of same (Ill. Rev. Stat. 1989, ch. 110, par. 12--603), including the provision that the "
application [must be] made within the time allowed for bringing an action on a foreign judgment
" (emphasis added) (Ill. Rev. Stat. 1989, ch. 110, par. 12--602), which was five years from the date of the judgment, the current Enforcement Act contains no such provision.  Instead, pursuant to section 12--652 of the Enforcement Act, a litigant may file an authenticated copy of the judgment he or she seeks to enforce, and give notice of such filing pursuant to section 12--653.  Neither section 12--652 nor section 12--653 contains a time limit within which the foreign judgment must be filed.  As noted above, the former act contained explicit requirements for filing a petition to register within the five-year statute of limitations period.  The current Enforcement Act does not contain a provision with respect to a time period within which to file a foreign judgment.  We must also assume the legislature was aware of the statute of limitations period in the former section 12--602 of the act, as well as other statutes of limitations that may be applicable to enforcement of judgment actions, when it amended the Enforcement Act and, had it intended to set forth a time limit within which to file a foreign judgment, it could have expressly added such a provision.  We must presume from the absence of a statute of limitations period in the Enforcement Act regarding the filing of a foreign judgment that the legislature intended to change the law in this respect.  See 
Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund
, 155 Ill. 2d 103, 113, 610 N.E.2d 1250 (1993) (it is well established that when the legislature uses certain language in one instance and completely different language in another, it intends different results); 
Chicago School Reform Board v. Illinois Educational Labor Relations Board
, 309 Ill. App. 3d 88, 95, 721 N.E.2d 676 (1999) (a material change to a statute creates an assumption that the legislature intended to change the existing law); 
Deloney v. Board of Education of Thornton Township
, 281 Ill. App. 3d 775, 782, 666 N.E.2d 792 (1996) ("when a statute is amended, it is presumed that the legislature intended to effect some change in the law as it formerly existed"); 
Forest City Erectors v. Industrial Comm'n
, 264 Ill. App. 3d 436, 440, 636 N.E.2d 969 (1994) (when the legislature amends an act and deletes certain language, it is presumed it intended to change the law).  Based on the fact that the Enforcement Act previously contained a statute of limitations for registration of a foreign judgment and the current Enforcement Act does not contain such a limitations period, and the fact that 
Johnson
 did not hold that a statute of limitations applied to registration, we conclude there is none.  Accordingly, as in 
Johnson
, plaintiffs should have been permitted to file their registration petition.  We therefore hold that the trial court erred in granting defendant's section 2--619 motion to dismiss the registration petition.  

This does not end our analysis, however.  First, to be recognized in Illinois, a foreign judgment must be "final and conclusive and enforceable where rendered."  735 ILCS 5/12--619 (West 1998).  In the instant case, the trial court did not make any findings with respect to these requirements because it did not allow plaintiffs to file their registration petition.  Accordingly, on remand, the trial court must make this determination, as well as a determination concerning the application of any other provision in the Recognition Act, including sections 12--621 and 12--622 (735 ILCS 5/12--621, 12--622 (West 1998)), that may impact on whether the plaintiffs' foreign judgment should be recognized in Illinois.  If the court determines that plaintiffs' judgment is entitled to recognition in Illinois, the provisions of the Enforcement Act shall apply.

With respect to the Enforcement Act, while the trial court appears to have concluded that plaintiffs failed to attach properly authenticated copies of its judgments in this action based on its statement that defendant's section 2--615 motion to dismiss had merit, and did conclude in plaintiffs' first cause of action, filed in the circuit court of Cook County in 1995, that the documents plaintiffs attached were not properly authenticated judgments, there is no evidence what the court actually based its decision on, nor is there any evidence that the trial court conducted the proper analysis to determine whether the documents were properly authenticated.  According to the Enforcement Act, the judgment must be authenticated in accordance with the statutes of this state or Acts of Congress.  735 ILCS 5/12--652 (West 1998).  This court has located no state statute on authentication of a judgment of a foreign country.  Accordingly, any Acts of Congress would be applicable, including Federal Rule of Evidence 902(3), Federal Rule of Civil Procedure 44(a)(2), and The Hague Convention Abolishing the Requirement of Legalisation for Foreign Public Documents.  Fed. R. Civ. P., appended to Rule 44.  If the trial court concludes, upon an analysis of these provisions, that plaintiffs' judgments are properly authenticated, the judgments shall be treated as any other Illinois judgment, subject to the same procedures, including reopening, revival under section 13--218 of the Code which plaintiffs have raised as an issue in this appeal, vacating, staying, and subject to any further relevant proceedings.

CONCLUSION

For the reasons stated, we reverse the judgment of the circuit court of Cook County and remand this cause for further proceedings consistent with this order.

Reversed and remanded.

HALL, P.J., and WOLFSON, J., concur.

FOOTNOTES
1:
Defendant's motion is more properly considered under section 2--619(a)(5), which defendant concedes in its brief.

2:
These Acts are modeled after the Uniform Foreign Money-Judgments Recognition Act and Uniform Foreign Enforcement of Foreign Judgments Act 1964 Revised Act.  See Uniform Laws Annotated, Master Edition, Vol. 13.

3:
Although several Illinois cases have held that judgments of a foreign country cannot be registered under the Enforcement Act (
In re Marriage of Brown
, 225 Ill. App. 3d 733, 738, 587 N.E.2d 648 (1992); 
In re Marriage of Agathos
, 194 Ill. App. 3d 168, 170, 550 N.E.2d 1161 (1990); 
Dayan v. McDonald's Corp.
, 78 Ill. App. 3d 194, 198, 397 N.E.2d 101 (1979); 
Zalduendo v. Zalduendo
, 45 Ill. App. 3d 849, 853, 360 N.E.2d 386 (1977); 
Hager v. Hager
, 1 Ill. App. 3d 1047, 1052, 274 N.E.2d 157 (1971)), these decisions are antiquated.  Each case involved the Enforcement Act in effect prior to its amendment in 1991.  The Enforcement Act, prior to 1991, provided that it governed judgments of the United States or any state or territory.  Ill. Rev. Stat. 1989, ch. 110, par. 12--601.  In 1991, the Act was repealed and the now existing Uniform Enforcement Act was enacted.  Section 12--651, which replaced old section 12--601, now provides that the Enforcement Act governs judgments of any court of the United States "or any other court which is entitled to full faith and credit in this State."  735 ILCS 5/12--651 (West 1998).  Pursuant to section 12--620, judgments of foreign countries are entitled to full faith and credit.  Accordingly, the provisions of the Enforcement Act now apply to judgments of foreign countries. 

4:
While plaintiffs state that the registration was made in January 1991, there is nothing in the body of the case to support this statement.  In any event, we must assume that the registration was attempted subsequent to January 17, 1991, because the defendant argued it was barred by the five-year statute of limitations period.