[No. B170647. Second Dist., Div. Five. Nov. 3, 2004.]

ALAIN RENOIR et al., Plaintiffs and Respondents, v.
REDSTAR CORPORATION et al., Defendants and Appellants.

COUNSEL

Washor & Associates and Lawrence I. Washor for Defendants and Appellants.

The Morris Law Firm and Richard W. Morris for Plaintiffs and Respondents.

OPINION

MOSK, J.—

## INTRODUCTION

Plaintiffs and respondents Societe Civile Succession Richard Guino, a French Trust (Societe Civile); Alain Renoir; and Jacques Renoir (plaintiffs) filed a "Petition for Entry of a California Court Judgment Under The Uniform Foreign Judgment Recognition Act," by which plaintiffs sought to enforce in California an April 8, 1998 French judgment (French judgment) against defendants Redstar Corporation, Jean-Emmanuel Renoir and Louise Hernandez (defendants). The trial court entered judgment in favor of plaintiffs (the California judgment) under Code of Civil Procedure sections 1713–1713.8 (Foreign Money-Judgments Act). Thereafter, defendants moved

under Code of Civil Procedure section 473, subdivision (d) to set aside the California judgment as void on the ground that the court had no personal jurisdiction over them because plaintiffs failed to produce evidence of actual receipt of process by defendants, no summons was issued or served, and defendants did not have minimum contacts with California. The trial court denied the motion. We reverse the trial court's order denying the motion to set aside the California judgment because plaintiffs failed to serve a summons on the defendants. We hold Code of Civil Procedure section 1713.3 requires that foreign country money judgments be enforced by bringing an action, and, as in other actions, a summons must be served to obtain personal jurisdiction over a defendant (Code Civ. Proc., § 410.50, subd. (a)).

## FACTUAL AND PROCEDURAL HISTORY

In 1998, plaintiffs obtained a French judgment for both monetary and nonmonetary relief. On October 18, 1999, plaintiffs filed a petition to enter a California judgment on the French judgment. On November 12, 1999, plaintiffs filed a notice of motion and motion in support of the petition, and filed accompanying declarations. The record does not reflect that a summons was issued in connection with the petition.

On November 15, 1999, plaintiffs filed a proof of service stating that the following documents were served on defendants in foreign countries by "CERTIFIED/REGISTERED MAIL" on November 12, 1999:

"1. Notice of Case Assignment;

"2. Petition for Entry of a California Court Judgment Under the Uniform Foreign Judgment Recognition Act;

"3. Notice of Lodging of Pleadings in Support of Petition for Entry of a California Court Judgment Under the Uniform Foreign Judgment Recognition Act;

"4. Declaration of Michele Segina in Support of Petition for Entry of a California Court Judgment Under the Uniform Foreign Judgment Recognition Act;

"5. Civil Case Cover Sheet; and

"6. Civil Case Sheet Addendum Certificate of Grounds for Assignment to District."

On December 14, 1999, plaintiffs filed and served "Via U.S. Mail" what they referred to as a "Reply Memorandum of Points and Authorities." In that

document, plaintiffs stated that, as no opposition had been filed by the defendants, the petition should be deemed admitted. There was no appearance by defendants at the December 16, 1999 hearing.

The trial court signed and entered the California judgment in favor of plaintiffs. That judgment awarded plaintiffs the same monetary and nonmonetary relief provided for in the French judgment.

There is a proof of service of the notice of entry of the California judgment showing it was mailed to defendants "VIA CERTIFIED/REGISTERED MAIL" on December 21, 1999. On February 1, 2000, Jean-Emmanuel Renoir, President of Redstar Corporation, wrote a letter to the trial court and counsel for plaintiffs stating that he had not received notification of the California action, which action he referred to by its case number.

More than three years later, on August 8, 2003, defendants appeared specially to file their motion to set aside the California judgment previously entered against them. In that motion, defendants contended that the judgment was void on the ground that the court did not have personal jurisdiction over them because of the failure of plaintiffs to serve a summons, other defects in service, and defendants' lack of minimum contacts with California. Simultaneously, defendants filed a request for judicial notice, attaching all of the documents previously filed in this action.

On September 19, 2003, the trial court denied defendants' motion to set aside the California judgment. The trial court in its minute order said, "Motion to set aside judgment is denied. Moving party participated in the foreign (French) action and the foreign judgment was rendered in accordance with American principals of jurisdictional due process. CCP 1713.5 further, [*sic*] the Court finds responding party served the documents and requested return receipts and receipts were returned (Exhibit G-1). Moving party had notice of the California action and Notice of the Entry of Judgment was mailed 12-21-99. Moving party took no further action until August 8, 2003."

Defendants filed a timely notice of appeal.

## DISCUSSION

Among the reasons raised by defendants concerning lack of personal jurisdiction over them are plaintiffs' failures to have issued and to serve a summons. Code of Civil Procedure section 410.50, subdivision (a) provides, "Except as otherwise provided by statute, the court in which an action is pending has jurisdiction over a party from the time summons is served on him as provided by Chapter 4 (commencing with Section 413.10). A general

appearance by a party is equivalent to personal service of summons on such party." As shall be discussed, fulfilling the statutory requirements of service of process—i.e., service of a summons—is necessary to obtain personal jurisdiction over a party.

■　Plaintiffs contend that the French judgment is entitled to recognition by the California court. But plaintiffs sought to enter the French judgment as a California judgment in order to enforce the terms—both monetary and nonmonetary—of the French judgment. Enforcement is different than recognition. (See Code Civ. Proc., § 1713.3.) A foreign judgment may be recognized for various purposes without being enforced. A foreign judgment cannot, however, be enforced unless it is entitled to recognition.[1] Plaintiffs argue that no summons is required for a proceeding to enforce a foreign judgment, including a foreign monetary judgment. We disagree with plaintiffs' position.

In 1967, the Legislature enacted the Uniform Foreign Money-Judgments Recognition Act. (Stats. 1967, ch. 503, § 1, p. 1847; Code Civ. Proc. §§ 1713–1713.8[2]; see 13 pt. II West's U. Laws Ann. (2002) U. Foreign Money-Judgments Recognition Act, pp. 39, 43 et seq. (the Uniform Act).) Prior to the enactment of the Uniform Act, foreign country judgments could be enforced on the basis of comity. (See *Hilton v. Guyot* (1895) 159 U.S. 113 [40 L.Ed. 95, 16 S.Ct. 139]; Newman and Zaslowsky, Litigating International Commercial Disputes (1996) 171 (Newman and Zaslowsky).) "The traditional procedure for enforcing both foreign-country and sister-state judgments was a second full-scale trial in the enforcing state." (Newman and Zaslowsky, *supra,* at p. 171; see also *164 East 72nd Street Corp. v. Ismay* 65 Cal.App.2d 574, 151 P.2d 29 (1944).)

The Uniform Act as enacted by the Legislature provided that "the foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit." (Stats. 1967, § 1, ch. 503, p. 1848; see Uniform Act, § 3.) Prior to the 1974 enactment of the provisions for enforcing sister state judgments (Code Civ. Proc., §§ 1710.10–1710.65), "[t]he exclusive way to enforce a sister state money judgment in California [was] to bring an action on the judgment; when a California judgment [was] obtained, the execution may issue. This traditional manner of enforcing

---

[1] "The judgment of a foreign state may not be enforced unless it is entitled to recognition. Whether a foreign judgment should be recognized may be in issue, however, not only in enforcement (see § 482), but in other contexts, for example where the defendant seeks to rely on a prior adjudication of a controversy (*res judicata*), or where either side in a litigation seeks to rely on prior determination of an issue of fact or law." (Rest.3d, The Foreign Relations Law of the United States, § 481, com. b, p. 595.)

[2] The state enactment made minor amendments to the Uniform Act. The only subsequent amendment has been to section 1713.3, which amendment is discussed *post.*

judgments of sister states require[d] all the normal trappings of an original action." (11 Cal. Law Revision Com. Rep. (1973), p. 457.)

In 1973, the California Law Revision Commission recommended a registration procedure to enforce sister state judgments. That recommendation was enacted in 1974. (Stats. 1974, ch. 211, § 3, p. 405; Code Civ. Proc., §§ 1710.10–1710.65.) Under that law, a judgment creditor files an application for entry of a California judgment based on a sister state judgment. (Code Civ. Proc., § 1710.15.) The judgment creditor must then serve promptly the notice of entry of judgment upon the judgment debtor "in the manner provided for service of summons." (Code Civ. Proc., § 1710.30, subd. (a).) The judgment debtor has 30 days after service of the notice of entry of judgment to move to vacate the judgment. (Code Civ. Proc., § 1710.40, subd. (b).)

As part of the 1974 act for the enforcement of sister state judgments, and as recommended by the California Law Revision Commission (11 Cal. Law Revision Com. Rep., *supra,* at p. 472), the Legislature amended Code of Civil Procedure section 1713.3, which had been part of the Uniform Act, to add an exception to the enforcement mechanism. As a result, Code of Civil Procedure section 1713.3 now provides as follows: "The foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit, *except that it may not be enforced pursuant to the provisions of Chapter 1 (commencing with Section 1710.10) of this title.*" (Italics added.) The California Law Revision Commission comment notes, "The amendment of Section 1713.3 makes clear that the procedure provided by Chapter 1 (commencing with Section 1710.10) for entering a California judgment based on a sister state judgment is not available for the enforcement of foreign nation money judgments. See Section 1710.10 and Comment. Foreign nation money judgments are enforced by bringing an action in California to obtain a domestic judgment. See *164 East 72nd Street Corp. v. Ismay* (1944) 65 Cal.App.2d 574 [151 P.2d 29]." (11 Cal. Law Revision Com. Rep., *supra,* at p. 472, reprinted at 19A West's Ann. Code Civ. Proc. (1982) foll. § 1713.3, p. 704.) By expressly providing that foreign money judgments could not be enforced in the same way as sister state judgments, the Legislature intended that foreign money judgments be enforced with "all the normal trappings of an original action" that had existed before in connection with the enforcement of sister state judgments. (11 Cal. Law Revision Com. Rep., *supra,* p. 457; see 8 Witkin, Cal. Procedure (4th ed. 1997) Enforcement of Judgment, § 431, pp. 434–435; McKnight, *Enforcement of a Foreign Money Judgment in California,* 1 Cal. International Practitioner (1989–1990) No. 2, pp. 1, 2 ["Unlike enforcement of a domestic judgment, a party enforces an FMJ [foreign monetary judgment] in California by filing an action here, by

which—if all requirements are met—the FMJ is essentially converted into a domestic judgment"]; *Hamilton v. Superior Court* (1974) 37 Cal.App.3d 418, 423 [112 Cal.Rptr. 450].)

■ There is nothing in the Foreign Money-Judgments Act that suggests the service of a proper summons is not required. Thus, the Foreign Money-Judgments Act does not exempt compliance with the procedures applicable to civil actions, including service of a summons. ■ Parenthetically, plaintiffs sought to enforce the nonmonetary portions of the French judgment, which are not even covered by the Foreign Money-Judgments Act; that act provides for enforcement of "any judgment of a foreign state granting or denying recovery of a sum of money . . . ." (Code Civ. Proc., § 1713.1, subd. (2).)

■ " '[C]ompliance with the statutory procedures for service of process is essential to establish personal jurisdiction.' " (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 544 [114 Cal.Rptr.2d 399].) "Process" is "a writ or summons issued in the course of judicial proceedings." (Code Civ. Proc., § 17, subd. (b)(6)[3]; see Govt. Code, §§ 22, 26660.) Unless otherwise provided by statute, notice of a claim against a defendant in a civil action is given by service of a summons on the person. (Code Civ. Proc., § 413.10.) As noted, Code of Civil Procedure section 410.50, subdivision (a) provides that except as otherwise provided by statute, the court obtains "jurisdiction over a party from the time summons is served on him. . . ." This proceeding is not a special proceeding in which process is something other than a summons, such as a notice or order to show cause or citation or writ. (See 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, §§ 876–878, pp. 1064–1065.) Plaintiffs' label of "Petition" on their pleading is of no significance. The Foreign Money-Judgments Act does not refer to a "petition." The summons is issued by the clerk of the court (Code Civ. Proc., § 412.10) and must comply with various requirements set forth by statute. (Code Civ. Proc., § 412.20; see *Ward v. Ward* (1881) 59 Cal. 139 [summons must contain the statutory requirements]; *County of Riverside v. Superior Court* (1997) 54 Cal.App.4th 443 [62 Cal.Rptr.2d 747]; see also Rest.2d Judgments, § 2.)[4] By not serving a summons, plaintiffs failed to take the required steps to obtain personal jurisdiction over defendants.

■ Knowledge by a defendant of a plaintiff's action does not satisfy the requirement of adequate service of a summons and complaint. (*Waller v.*

---

[3] The statute was amended in 2003. The prior Code of Civil Procedure section 17, subdivision (6) was virtually identical to what is now Code of Civil Procedure section 17, subdivision (b)(6).

[4] "The normal mode of notice-giving at common law, after the use of arrest became exceptional, was direct manual delivery of summons by an official to the person to be notified." (Rest.2d Judgments, § 2, com. a, p. 35.)

*Weston* (1899) 125 Cal. 201 [57 P. 892]; *Kuchins v. Hawes* (1990) 226 Cal.App.3d 535, 540 [276 Cal.Rptr. 281]; *Honda Motor Co. v. Superior Court* (1992) 10 Cal.App.4th 1043, 1048 [12 Cal.Rptr.2d 861]; *Kappel v. Bartlett* (1988) 200 Cal.App.3d 1457, 1466–1467 [246 Cal.Rptr. 815].) When, as here, there is a complete failure to comply with statutory requirements, there can be no substantial compliance with those statutory or due process requirements. (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1439, fn. 12 [29 Cal.Rptr.2d 746].)

Plaintiffs contended at oral argument that certain of defendants' arguments dealt with the merits of the case and therefore constituted a general appearance. Plaintiffs cited *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52–53 [12 Cal.Rptr.3d 711], in which we said, "The Courts of Appeal have described the scope of actions in the litigation process which constitute a general appearance as follows: 'A general appearance occurs where a party, either directly or through counsel, participates in an action in some manner which recognizes the authority of the court to proceed. It does not require any formal or technical act. [Citations.] "If the defendant '*raises any other question, or asks for any relief* which can only be granted upon the hypothesis that the court has jurisdiction of his person, his appearance is general . . . .' " ' " Another court noted, "The appearance will be considered 'general' in nature if the defendant acts in a manner 'showing of a "purpose of obtaining any ruling or order of the court going to the merits of the case." ' " (*California Overseas Bank v. French American Banking Corp.* (1984) 154 Cal.App.3d 179, 184 [201 Cal.Rptr. 400]; see *Nam Tai Electronics, Inc. v. Titzer* (2001) 93 Cal.App.4th 1301, 1306–1309 [113 Cal.Rptr.2d 769]; disapproved on another ground in *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 278, fn. 8 [127 Cal.Rptr.2d 329, 58 P.3d 2].)

Defendants did refer to enforceability of the French judgment in their reply brief, but only to argue that the court should not consider facts not in the record. Defendants made clear that "whether Respondents [defendants] believe that they would prevail if the action were to be tried is irrelevant to the instant appeal." In a footnote in connection with this point, defendants added a suggestion that the trial court erred in concluding that the French judgment was rendered in accordance with American principles of jurisdictional due process. And defendants answered this court's question about the nature of the French judgment. These brief references to issues relating to whether the trial court correctly enforced the French judgment do not constitute a general appearance. Defendants expressly adhered to their position that the trial court had no personal jurisdiction over them. At no time did they seek any relief other than vacating the judgment on the ground of lack of personal jurisdiction or otherwise recognize the authority of the trial court to determine the enforceability of the French judgment. Accordingly, defendants did not appear generally.

■ Because no summons was served on any of the defendants and the defendants did not generally appear in the proceeding, the trial court had no jurisdiction over them. Therefore, the California judgment was void, as is the order denying the motion to vacate the California judgment. (*Carlson v. Eassa* (1997) 54 Cal.App.4th 684, 691 [62 Cal.Rptr.2d 884] [an order denying a motion to vacate void judgment is a void order and appealable].) Moreover, the California judgment is void on its face because the defect—the failure to serve a summons—is ascertainable from the record. (See *Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 493 [165 Cal.Rptr. 825, 612 P.2d 915]; *Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 951 [126 Cal.Rptr. 805, 544 P.2d 941]; *Dill v. Berquist Construction Co., supra,* 24 Cal.App.4th at p. 1441; 8 Witkin, Cal. Procedure, *supra,* Attack on Judgment in Trial Court, § 12, pp. 519–520.) Thus, any delay in seeking to vacate the California judgment is of no significance. As stated by an authority, "A judgment or order that is invalid on the face of the record is subject to collateral attack. . . . It follows that it may be set aside on motion, with no limit on the time within which the motion must be made." (8 Witkin, Cal. Procedure, *supra,* Attack on Judgment in Trial Court, § 202, p. 707; see also *Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1286 [111 Cal.Rptr.2d 439].) Although the authorities we cite deal with the consequences of defective notice or service, it follows from those cases that the failure to issue and serve a required summons should have the same effect.

Plaintiffs, in support of their position, assert that in connection with their opposition to the motion to set aside the judgment, a superior court clerk had informed them that a summons for an action to enforce a foreign money judgment is not required. Plaintiffs do not claim, however, that they ever attempted to obtain such a summons. Had plaintiffs been unable to obtain such a summons, their remedy would have been to apply to the court to require the clerk to perform this responsibility. (See 2 Witkin, Cal. Procedure, *supra,* Court, § 371, p. 444.)

The trial court erred in not setting aside the California judgment. In view of our conclusion, we need not discuss the other jurisdictional issues.

## DISPOSITION

The order of the trial court denying the motion to set aside the judgment is reversed, and the matter is remanded for the trial court to set aside and vacate the California judgment. Defendants shall recover their costs on appeal.

Turner, P. J., and Armstrong, J., concurred.