67 Cal.Rptr.3d 443 (2007)
156 Cal.App.4th 644
Renato GUIMARAES, Jr., Plaintiff and Appellant,
v.
NORTHROP GRUMMAN CORPORATION, Defendant and Respondent.
No. B194205.
Court of Appeal of California, Second District, Division Eight.
October 30, 2007.
*444 Engstrom Lipscomb & Lack, Walter J. Lack and Steven C. Shuman, Los Angeles, for Plaintiff and Appellant.
Allen Matkins Leek Gamble Mallory & Natsis, Ed W. Green, A. Kristine Floyd and Robert C. Shaia, Irvine, for Defendant and Respondent.
Benedon & Serlin, Gerald M. Serlin and Douglas G. Benedon, Los Angeles, as amicus curiae on behalf of Plaintiff and Appellant.
RUBIN, J.

SUMMARY
An action seeking recognition and enforcement of a foreign money judgment under the Uniform Foreign Money-Judgments Recognition Act is subject to the 10-year statute of limitations applicable to actions on sister state judgments (Code of Civil Procedure section 337.5, subdivision 3), rather than to the four-year catch-all statute of limitations in Code of Civil Procedure section 343.

FACTUAL AND PROCEDURAL BACKGROUND
On December 30, 2005, Renato Guimar-Brazilian lavyer, filed a complaint against Northrop Grumman Corporation. Guimaraes sought recognition and enforcement of a judgment for attorney fees rendered in Brazil. Guimaraes filed his first amended complaint, and summons was issued and filed on the first amended complaint, on May 12, 2006.
The judgment Guimaraes sought to enforce was rendered in Brazil on June 30, 2000. The judgment occurred in a lawsuit filed after the crash of a Brazilian aircraft in October 1996, in which 99 persons were killed. Many of the families of crash victims filed lawsuits in Orange County, but Northrop obtained a stay of those cases on forum non conveniens grounds, and agreed to submit to the jurisdiction of the Brazilian courts. Guimaraes and another Brazilian lawyer, Irineu Strenger, then brought an action in Brazil. The Brazilian court rendered a judgment in favor of the families, concluding the "initiating cause" of the crash was a malfunction of a thrust reverser manufactured by Northrop. The judgment awarded damages against Northrop aggregating more than $100 million, and included an award of attorney fees in the amount of 20 percent of the damages. Northrop appealed the judgment, and subsequently reached settlements with many of the families.
Guimaraes's complaint seeking recognition of the judgment for attorney fees alleged that, under Brazilian law, the award of attorney fees is a judgment in favor of the attorneys, not the families. "It vests immediately and is not subject to any appeal in Brazil with respect to any of the cases that have settled." Guimaraes asked the court, under the Uniform Foreign Money-Judgments Recognition Act (Uniform Act), "to recognize and enforce the Judgment ... to the extent that Judgment awards attorneys fees, by entering a domestic judgment in a dollar amount equivalent to the amount of the Brazilian Judgment, with post-judgment interest, costs, and fees as appropriate."
*445 Northrop demurred to Guimaraes's first amended complaint on two grounds: first, it was barred by the statute of limitations; and second, Strenger, the other attorney in whose favor attorney fees were awarded, was an indispensable party without whom the action could not proceed. The trial court concluded the action was timebarred by the four-year statute of limitations in Code of Civil Procedure section 343. The court, in the alternative, dismissed the action without prejudice for failure to join Strenger as an indispensable party.
Guimaraes moved for reconsideration "based on new facts presented through the declaration of Clito Fornaciari...." Fornaciari, a professor of civil procedure and former president of the Sao Paulo State Attorneys Association, stated that a judgment for attorney fees is not final and enforceable in Brazil while the judgment is on appeal. Thus, even if the statute of limitations for filing an action under the Uniform Act were four years, the judgment for attorney fees as to any particular family's case would not become final and enforceable, and Guimaraes's cause of action under the Uniform Act therefore did not accrue, until that family concluded a settlement. Guimaraes contended he could amend his complaint to allege that numerous settlements occurred within four years of his filing this action. He also presented a declaration from his attorney showing that Strenger had agreed to join the litigation as a plaintiff.
A week after Guimaraes moved for reconsideration, the trial court signed and entered a judgment dismissing his action with prejudice. Guimaraes's motion for reconsideration, as well as a subsequent motion to set aside the judgment and for a new trial, were denied, and Northrop's objections to Guimaraes's expert declarations on Brazilian law were sustained.
Guimaraes filed a timely appeal. This court granted a request by Benedon & Serlin, a law firm active in the representation of businesses and individuals who have brought collection actions in California involving foreign judgments, to file an amicus curiae brief in support of Guimaraes.

DISCUSSION
This case presents a question of first impression in California: what statute of limitations is applicable to an action, brought under the Uniform Act, for the recognition and enforcement of a foreign money judgment? The parties and amicus curiae offer three different answers:
 Northrop contends a Supreme Court case decided in 1891 provides the answer. Dore v. Thornburgh (1891) 90 Cal. 64, 27 P. 30 held that an action to recover on a judgment rendered by an English tribunal was subject to the four-year statute of limitations applicable to actions "not hereinbefore provided for...." (Code Civ. Proc, § 343.)
 Guimaraes contends the statute of limitations on an action for recognition and enforcement of a foreign money judgment is 10 years, based on the Uniform Act (Code Civ. Proc, § 1713.3) and Code of Civil Procedure section 337.5.[1] Section 1713.3 states that a foreign money judgment "is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit," and section 337.5, subdivision 3, sets a 10-year limitations period for "[a]n action upon a judgment or decree of any court of the United States or of any state within the United States."

*446  Amicus curiae argue that an action under the Uniform Act is timely so long as it is enforceable in the country where the judgment was rendered.
We conclude the trial court erred in applying the four-year statute, and instead should have applied the 10-year statute of limitations applicable to actions on judgments of courts of the United States and sister state courts.[2] Before turning to that issue, we briefly describe the contours of the law applicable to the recognition and enforcement of foreign money judgments.

A. The Uniform Act.
Foreign money judgments may be enforced in California if they meet the requirements of the Uniform Act (§§ 1713-1713.8) and the creditor brings an action in California to obtain a domestic judgment. (See Renoir v. Redstar Corp. (2004) 123 Cal.App.4th 1145, 1151, 20 Cal.Rptr.3d 603 (Renoir).)[3] The pertinent provisions of the Act are these:
 The Act applies to "any foreign judgment that is final and conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal." (§ 1713.2.)
 Unless specified grounds for non-recognition of the foreign money judgment exist, "[t]he foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit...."[4] (§ 1713.3.) The only exception is that foreign judgments may not be enforced under the registration procedure used for the enforcement of sister state judgments. (§ 1713.3; see §'§ 1710.10-1710.65.)
 The court may stay the action if the defendant satisfies the court that an appeal of the foreign judgment is pending or that the defendant is entitled and intends to appeal. (§ 1713.6.)
 The Act is to be "so construed as to effectuate its general purpose to make uniform the law of those states which enact it." (§ 1713.8.)

B. Guimaraes's action for recognition and enforcement of the Brazilian judgment for attorney fees is subject to the 10-year statute of limitations applicable to actions on sister state judgments.
In this case, we address the continued vitality of our Supreme Court's 1891 decision in Dore v. Thornburgh, supra, 90 Cal. at pages 66-67, 27 P. 30, applying the four *447 year statute of limitations for actions "not hereinbefore provided for" (§ 343) to an action to recover on a foreign judgment. We conclude the Legislature's enactment, more than 60 years after Dore v. Thornburgh, of a 10-year statute of limitations for an action on a sister state judgment, and its subsequent passage of the Uniform Act in 1967, making a foreign judgment "enforceable in the same manner as the judgment of a sister state" (§ 1713.3), effectively eliminated Dore's basis for applying the four-year statute to foreign judgments. In other words, in 1891, an action on a foreign judgment was "not embraced" in any limitations period prescribed by the Legislature, and therefore necessarily fell within section 343. (Dore v. Thornburgh, supra, 90 Cal. at pp. 66-67, 27 P. 30.) The same circumstances do not exist today. The Legislature's enactment of a 10-year limitations period for a sister state judgment, and its decision to make foreign judgments "enforceable in the same manner as the judgment of a sister state," changed the fundamental underpinnings of Dore v. Thornburgh. Those legislative changes require the courts to apply the same statute of limitations to actions on foreign judgments as is applied to actions on sister state judgments.
Northrop resists this conclusion, but its contentions are not persuasive. It argues, without authority, that the ruling in Dore v. Thornburgh continues to apply because the Uniform Act does not expressly specify a limitations period, and the Legislature did not amend the general statutes of limitations (§§ 312-366.3) to specify a limitations period for actions on foreign judgments. But we must decide this case based on what the Legislature actually did: it enacted a 10-year limitations period for actions on sister state judgments (§ 337.5, subd. 3), and enacted a law specifying that foreign judgments are enforceable in the same manner as sister state judgments. (§ 1713.3.) The latter law contains a single exception to its mandate that a foreign judgment is enforceable "in the same manner as the judgment of a sister state...." The only exception is "that it [the foreign judgment] may not be enforced pursuant to the provisions of Chapter 1" (ibid.), which, as we have explained ante, establish a registration procedure for the enforcement of sister state judgments. Thus, unlike sister state judgments, foreign money judgments are enforced by bringing an action in California to obtain a domestic judgment. (Renoir, supra, 123 Cal. App.4th at p. 1151, 20 Cal.Rptr.3d 603.) The Legislature provided no other exceptions to its mandate that a foreign judgment is to be enforced in the same manner as a sister state judgment, and we are not at liberty to create one by applying a different limitations period to actions on foreign judgments.
Northrop next points out that a distinction exists between the recognition of a foreign judgment and the enforcement of a foreign judgment. Northrop is correct, of course, as the court explains in Renoir: a foreign judgment may be recognized for various purposes (such as for a res judicata defense) without being enforced, but a foreign judgment cannot be enforced unless it is entitled to recognition. (Renoir, supra, 123 Cal.App.4th at p. 1150 & fn. 1, 20 Cal.Rptr.3d 603.) From this distinction, Northrop asks us to conclude that section 1713.3making foreign judgments enforceable in the same manner as sister state judgments"does not affect the statute of limitations on a `recognition' action in California." Although Northrop does not expressly say so, it appears to be arguing that, even if the 10-year statute applies to enforcement actions, the four-year statute applies to recognition actions. For this there is no authority, not even Dore v. Thornburgh, which was an action *448 to enforce a foreign judgment and predated the Uniform Act's recognition provisions by 75 years. Moreover, the suggestion that a shorter statute of limitations should apply to a "recognition" action than to an action seeking enforcement of the judgment after it is recognized is irrational, as it would completely undercut the Legislature's intent to enforce foreign judgments in like manner with sister state judgments.[5]
At its base, the distinction Northrop draws between recognition and enforcement is entirely artificial. An action seeking recognition of a foreign judgment almost always does so, as in this case, for the purpose of enforcing the judgment; there would otherwise be little point in bringing a lawsuit, Certainly, as Renoir points out, a foreign judgment "may be recognized for various purposes without being enforced." (Renoir, supra, 123 Cal. App.4th at p. 1150, 20 Cal.Rptr.3d 603.) But the "other contexts" Renoir cites in which recognition is an issue do not involve bringing an action for recognition, and do not implicate any statute of limitations issues. The "other contexts" in which a foreign judgment may be recognized involve other, preexisting litigation, "`where the defendant seeks to rely on a prior adjudication of a controversy (res judicata ), or where either side in a litigation seeks to rely on prior determination of an issue of fact or law.'" (Id. at p. 1150, fn. 1, 20 Cal.Rptr.3d 603, quoting Rest.3d, The Foreign Relations Law of the United States, § 481, com. b, p. 595.) In short, the suggestion that different statutes of limitations may or should apply to "recognition" actions and "enforcement" actions is fundamentally at odds with the ultimate purpose for which litigants file actions under the Uniform Act: to collect on a foreign money judgment.
Northrop further argues that the Legislature's requirement that foreign judgments be enforced "in the same manner" as sister state judgments does not include time limitations, which govern "when" an action may be brought, not "how" it must be brought. Neither legal authorities nor common sense supports this proposition. The definition of "manner" includes "a mode of procedure" (Webster's Ninth New Collegiate Dictionary (1989) p. 724, column 2), and timing is a matter of procedure. (See, e.g., Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital (1994) 8 Cal.4th 100, 114, 32 Cal.Rptr.2d 263, 876 P.2d 1062 [referring to "procedural purposes, such as statutes of limitations"]; see also Nadd, supra, 804 So.2d at p. 1232 [enforcement of foreign judgments "in the same manner" as state judgments includes the time constraints of state law].)
*449 Finally, Northrop contends that only one other stateIllinoishas adopted the view we take here, namely, that an action under the Uniform Act is subject to the limitations period applicable to actions on sister state judgments. {La Societe Anonyme Goro v. Conveyor Accessories, Inc. (1997) 286 Ill.App.3d 867, 870, 677 N.E.2d 30, 32 [trial court erred in applying Illinois's five-year catch-all limitations period to action for registration of a foreign judgment, because enrollment and enforcement of a sister state judgment was governed by a seven-year limitations period, and a foreign judgment was "`enforceable in the same manner as the judgment of a sister state'"].) Again, while true, the point does not assist Northrop, because it is also true that no other state Has reached a contrary conclusion. In short, few cases from other states address the issue, and none of them lend support to Northrop's position. (See Nadd, supra, 804 So.2d at pp. 1232-1234 [Florida statute of limitations does not apply to recognition of a foreign money judgment; only limitation is that the judgment be enforceable where rendered; Florida's 20-year statute of limitations applied to enforcement of the judgment, because statute required the recognized judgment to be "`enforced in the same manner'" as a Florida judgment]; Pinilla v. Harza Engineering Co. (2001) 324 Ill.App.3d 803, 810, 755 N.E.2d 23, 28 [same, applying Illinois law].)
We come to the final point on this topic, which is amicus curiae's contention we should follow Nadd and Pinilla and determine that no California statute of limitations applies to recognition of a foreign money judgment under the Uniform Act. In amicus curiae's view, "[a]n action to domesticate a foreign money judgment" under the Uniform Act is timely so long as the judgment is enforceable in the country where the judgment was rendered. Amicus curiae suggests this result is prescribed by the Uniform Act, which simply states that the Act applies to "any foreign judgment that is final and conclusive and enforceable where rendered...." (§ 1713.2.) We decline to adopt amicus's position for a number of reasons. Guimaraes did not assert amicus's position in the trial court. While we have the discretion to consider a new legal theory on appeal when the theory is not dependent on disputed facts, we are not required to do so. In this case, we see no reason to do so. While it may be analytically supportable to conclude that recognition should depend only on the status of the judgment in the country where rendered, we discern no practical reason for making such a determination in this case. Whatever the conclusion might be, the outcome in this case would remain unchanged: even if the "recognition" portion of the action is not subject to any statute of limitations, the question of the statute of limitations applicable to the enforcement portion of the action would remain. In short, this case presents no reason for this court to make the determination suggested by amicus curiae.
In sum, an action under the Uniform Act is subject to the 10-year statute of limitations applicable to actions on sister state judgments, and the trial court therefore erred in sustaining Northrop's demurrer to Guimaraes's complaint.[6]

*450 DISPOSITION
The judgment of dismissal is reversed. Renato Guimaraes is to recover his costs on appeal.
We concur: COOPER, P.J., and FLIER, J.
NOTES
[1] All statutory references are to the Code of Civil Procedure unless otherwise noted.
[2] Our conclusion the 10-year statute applies, rather than the four-year statute, makes it unnecessary to consider whether the action accrued on the date the Brazilian judgment was rendered, without regard to its lack of finality and enforceability under Brazilian law during pending appeals. Both issues are involved in a case now under review in the Supreme Court. [Manco Contracting Co. v. Bezdikian, review granted Aug. 22, 2007, S154076.)
[3] Before passage of the Act in 1967, foreign judgments were enforced on the basis of comity. (Renoir, supra, 123 Cal.App.4th at p. 1150, 20 Cal.Rptr.3d 603.) "The purpose of the Uniform Act was to create greater recognition of the state's judgments in foreign nations. This was to be accomplished by informing the foreign nations of particular situations in which their judgments would definitely be recognized, and thus encourage them to recognize California judgments." (Bank of Montreal v. Kough (N.D.Cal.1977) 430 F.Supp. 1243, 1249, citing the Commissioners' Prefatory Note to the Uniform Foreign Money-Judgments Recognition Act.)
[4] The Act specifies the grounds for non-recognition of a foreign judgment (§ 1713.4), and also lists circumstances under which a foreign judgment should not be refused recognition for lack of personal jurisdiction. (§ 1713.5.) None of these provisions is at issue in this case.
[5] Northrop points out that the Florida Supreme Court recognized the distinction between recognition and enforcement of foreign money judgments in Nadd v. Le Credit Lyonnais, S.A. (Fla.2001) 804 So.2d 1226, 1231-1232 (Nadd), and applied different limitations periods for the recognition and for the enforcement of a foreign judgment. Indeed it did, but Nadd does not assist Northrop. Nadd heldas amicus curiae urge us to dothat no State statute of limitations was applicable to the recognition of a foreign country money judgment. Rather "the only limitation applicable to the recognition of a foreign money judgment is that the judgment be enforceable where rendered; Florida's statute of limitations does not affect the recognition portion of a [Uniform Act] action." (Nadd, supra, 804 So.2d at p. 1233.) The court then held that, once a judgment was recognized, Florida's 20-year statute of limitations applied to enforcement of the judgment, because Florida's Uniform Act required the recognized judgment to be "`enforced in the same manner as the judgment of a court of this state.'" (Id. at pp. 1234, 1232.) Nothing in Nadd supports, enforcement of a "catch-all" statute of limitations to an action for recognition of a foreign money judgment.
[6] We need not discuss the trial court's alternative ruling dismissing the action without prejudice on the ground that Strenger was an indispensable party. Guimaraes subsequently submitted a declaration from his lawyer indicating that Strenger had signed a retainer agreement; his firm would undertake Strenger's representation; and he would, if permitted, amend the first amended complaint to add Strenger as a plaintiff. In light of our conclusion on the statute of limitations, we likewise need not discuss the propriety of the trial court's post-judgment rulings refusing to permit Guimaraes to amend the complaint, sustaining Northrop's objections to the expert declarations on Brazilian law, and so on.