[No. S154076. Nov. 17, 2008.]

MANCO CONTRACTING COMPANY (W.L.L.), Plaintiff and Appellant, v. KRIKOR BEZDIKIAN, Defendant and Respondent.

COUNSEL

Benedon & Serlin, Gerald M. Serlin and Douglas G. Benedon for Plaintiff and Appellant.

Engstrom, Lipscomb & Lack, Walter L. Lack and Steven C. Shuman for Renato Guimaraes, Jr., as Amicus Curiae on behalf of Plaintiff and Appellant.

Revere & Wallace, Frank Revere, Gabriel S. Dermer; Roxborough, Pomerance & Nye, Gary A. Nye and Michael G. Kline for Defendant and Respondent.

Allen Matkins Leck Gamble Mallory & Natsis, A. Kristine Floyd and Robert C. Shaia for Northrop Grumman Corporation as Amicus Curiae on behalf of Defendant and Respondent.

OPINION

**CORRIGAN, J.**—In this case we decide when a foreign judgment is final for purposes of recognition under the Uniform Foreign Money-Judgments Recognition Act (UFMJRA) (Code Civ. Proc., former § 1713.1 et seq., added by Stats. 1967, ch. 503, § 1, p. 1847, repealed by Stats. 2007, ch. 212, § 1, eff. Jan. 1, 2008)[1] and what statute of limitations applies.

The UFMJRA authorizes recognition of "any foreign judgment that is final and conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal." (Former § 1713.2.) When a foreign judgment is appealed, and the foreign nation's law provides that a judgment on appeal is not final, does section 1713.2 permit a California court to recognize the judgment? We conclude the answer is no. The most reasonable interpretation of the admittedly confusing statutory language is that the law of the nation *where the judgment was rendered* determines

---

[1] After this court granted review, the Legislature repealed the UFMJRA and enacted in its place the Uniform Foreign-Country Money Judgments Recognition Act (UFCMJRA) (Code Civ. Proc., § 1713 et seq., added by Stats. 2007, ch. 212, § 2). The new law applies to all recognition actions filed on or after its effective date of January 1, 2008. (Code Civ. Proc., § 1724, subd. (a).) All further unlabeled statutory references in this opinion are to the Code of Civil Procedure, and all citations to sections 1713.1 through 1713.8 refer to the provisions of the former UFMJRA.

whether the judgment is sufficiently final, conclusive, and enforceable to be subject to recognition in California. If the foreign nation's rule is that judgments are final even though an appeal is pending, a judgment may be recognized in California despite an appeal. If the foreign rule is that judgments are not final while an appeal is pending, a judgment on appeal cannot be recognized in California. This interpretation is consistent with the conclusions reached by other states applying the uniform act and the apparent intent of the commissioners who drafted it.

The UFMJRA does not prescribe a statute of limitations for actions to recognize foreign judgments.[2] However, the act does provide (with one exception not relevant here) that a "foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit . . . ." (Former § 1713.3.) An action to enforce a sister state judgment is subject to a 10-year statute of limitations (§ 337.5). It appears section 1713.3 reflects the Legislature's intent to apply the same limitations period to the enforcement of judgments from foreign nations. A 10-year limitations period is also consistent with the 10-year period of enforceability for California judgments. (§ 683.020; see also § 683.110 et seq. [providing for extension of the 10-year enforceability period by renewal of the judgment].) Over a century ago, this court did hold in *Dore v. Thornburgh* (1891) 90 Cal. 64 [27 P. 30] that the four-year "catchall" limitations period of section 343 applied to an action to recover upon a foreign judgment. However, *Dore* was decided long before the Legislature enacted the UFMJRA. Thus, it is no longer controlling.

## BACKGROUND

On November 16, 1997, the Qatari company Manco Contracting Company (W.L.L.) (Manco) obtained a multimillion-dollar judgment against Krikor Bezdikian in the Grand Civil Court of Doha, in the nation of Qatar. Bezdikian appealed from the judgment, then left the country. He now lives in California. On May 23, 2000, a Qatari appellate court amended the judgment, reducing the award from more than $4.2 million to approximately $3.76 million. The Qatari appellate court issued a new judgment awarding Manco this new amount plus "a reasonable share of court expenses" and an amount for attorney fees.

---

[2] The omission is remedied in California's new version of the act, which states that a recognition action must be brought "within the earlier of the time during which the foreign-country judgment is effective in the foreign country or 10 years from the date that the foreign-country judgment became effective in the foreign country." (§ 1721.)

On May 20, 2004, Manco filed a complaint in the Los Angeles County Superior Court seeking to domesticate its Qatari judgment under the UFMJRA. Bezdikian sought summary judgment, arguing that the cause of action accrued in 1997, and was therefore barred by the four-year statute of limitations of section 343, which both sides believed applied. (See *Dore v. Thornburgh, supra,* 90 Cal. 64, 66–67.)

In response, Manco submitted an expert declaration stating that, under Qatari law, a judgment is "never final" before conclusion of an appeal unless the parties previously agreed to treat the judgment as final, the judgment is nonappealable, or the time for appeal has expired. Thus, Manco maintained its cause of action did not accrue until May 23, 2000, when the Qatari appellate court issued its amended judgment. The trial court rejected this argument. Based on the analysis in *Korea Water Resources Corp. v. Lee* (2004) 115 Cal.App.4th 389 [8 Cal.Rptr.3d 853] *(Korea Water),* the court interpreted section 1713.2 to provide that the UFMJRA permits recognition of a foreign judgment that has been appealed, or is subject to appeal, regardless of whether the foreign country recognizes it as "final" under such circumstances. Accordingly, the court concluded Manco's cause of action for recognition accrued in November 1997, when the Qatari trial court entered judgment against Bezdikian.

The Court of Appeal reversed. Disagreeing with *Korea Water,* the court interpreted section 1713.2 to mean that a foreign judgment is not subject to recognition under the UFMJRA unless and until it is final, conclusive, and enforceable under the law where the judgment was rendered. If the foreign jurisdiction's law does not consider a judgment to be final while it is on appeal, then a claim under section 1713.2 to recognize the judgment cannot be brought until after the appellate process has ended. The Court of Appeal concluded the expert testimony offered by Manco raised a triable issue of fact about whether the initial judgment was sufficiently "final" and "conclusive" under Qatari law to satisfy section 1713.2, and therefore summary judgment should have been denied. Because the court's interpretation of section 1713.2 meant that Manco's claim was timely even under the four-year statute of limitations of section 343, the Court of Appeal did not consider Manco's additional arguments, raised for the first time on appeal, that no statute of limitations applies to a recognition action, or, alternatively, that the 10-year limitations period applicable to enforcement of sister state judgments (§ 337.5) is controlling.[3]

---

[3] Although the Court of Appeal did not reach the statute of limitations question here, a different panel of the same appellate division did in *Guimaraes v. Northrop Grumman Corp.* (2007) 156 Cal.App.4th 644 [67 Cal.Rptr.3d 443], review granted January 23, 2008, S158736. The Court of Appeal in *Guimaraes* concluded the 10-year limitations period of section 337.5 applies to an action for recognition of a foreign judgment.

We granted review to resolve both the accrual and statute of limitations questions.

## DISCUSSION

I. *When a Foreign Judgment Is Final Under the UFMJRA*

California adopted the UFMJRA in 1967. Before the Legislature codified the provisions of this uniform act, the recognition and enforcement of foreign money judgments proceeded as a matter of comity. (*Renoir v. Redstar Corp.* (2004) 123 Cal.App.4th 1145, 1150 [20 Cal.Rptr.3d 603]; see *Hilton v. Guyot* (1895) 159 U.S. 113, 202–203, 205–206 [40 L.Ed. 95, 16 S.Ct. 139].) Comity remains the basis for recognizing foreign judgments not covered by the act, such as domestic relations judgments. (§§ 1715, subd. (b)(3), 1723; see *In re Stephanie M.* (1994) 7 Cal.4th 295, 314 [27 Cal.Rptr.2d 595, 867 P.2d 706] [observing, with respect to Mexican child custody decree, that "courts of this state may, but are not required to, execute the judgment of a foreign nation as a matter of comity"].)

The purpose of the uniform act was to codify the most prevalent common law rules for recognizing foreign money judgments and thereby encourage the reciprocal recognition of United States judgments in other countries. (13 pt. II West's U. Laws Ann. (2002) U. Foreign Money-Judgments Recognition Act, Prefatory Note, p. 40 (uniform act).) Many civil law countries make the recognition of foreign judgments dependent upon reciprocity. Drafters of the uniform act believed codification of uniform rules would satisfy foreign reciprocity concerns and encourage greater recognition and enforcement of American judgments abroad. (*Ibid.*; see also *Bank of Montreal v. Kough* (N.D.Cal. 1977) 430 F.Supp. 1243, 1249 ["The purpose of the Uniform Act was to create greater recognition of the state's judgments in foreign nations. This was to be accomplished by informing the foreign nations of particular situations in which their judgments would definitely be recognized, and thus encourage them to recognize California judgments."].)

■ The dispute here centers on the meaning of section 1713.2, which describes the type of foreign judgments that may be recognized under the UFMJRA. Section 1713.2 states: "This chapter applies to [1] any foreign judgment that is final and conclusive and enforceable where rendered [2] even though an appeal therefrom is pending or it is subject to appeal." (Former § 1713.2.) California courts have disagreed about the extent to which the second clause undermines the first.

The Court of Appeal in this case gave primacy to the first clause, interpreting section 1713.2 "to consider a foreign judgment final, despite an appeal, if it is otherwise 'final and conclusive and enforceable *where rendered.*' (§ 1713.2, italics added.)" The court observed that, unlike California, some foreign jurisdictions consider a judgment to be final and conclusive even if subject to appeal or modification. Recognizing these differences, the Court of Appeal interpreted section 1713.2 to mean that, in all cases, recognition of a foreign judgment depends upon the judgment's finality, conclusiveness, and enforceability in the country where rendered, even if the foreign country's rules are different from those we apply in California.

The opposite conclusion was reached in *Korea Water, supra,* 115 Cal.App.4th 389. There, the court termed the second clause of section 1713.2 the "appellate caveat." Giving primacy to the "caveat," the *Korea Water* court interpreted the statute to mean "California . . . will recognize foreign judgments that are final, conclusive, and enforceable, notwithstanding the fact they may still be subject to appellate review," regardless of the foreign law on this point. (*Korea Water, supra,* at p. 398.) The *Korea Water* court recognized that there is considerable tension between the two clauses. Its attempt to reconcile them ultimately fails the tests of logic and practicality, however. The court observed, "section 1713.2's reference to a final, conclusive and enforceable judgment 'where rendered' makes it clear it is the status of the foreign judgment *in the foreign country* that determines whether the judgment is ripe for recognition in California." (*Ibid.*) Yet it ultimately undermined this observation by concluding that the "appellate caveat" language was meant to override any contrary foreign law concerning the effect of an appeal: "The appellate caveat to section 1713.2 makes it clear that the fact that a foreign judgment is still vulnerable to change on appeal in the foreign country is not *alone* enough to preclude recognition of a foreign judgment which is *otherwise* final, conclusive, and enforceable in the foreign country." (*Ibid.,* second italics added.) The court appeared to say that we look to foreign law to decide whether a judgment is final, conclusive and enforceable, but if, under foreign law, the judgment is not final because of a pending or a potential appeal, we ignore foreign law and recognize the judgment anyway.

The *Korea Water* court went on to apply this principle in the case before it, which involved a multimillion-dollar Korean judgment. (*Korea Water, supra,* 115 Cal.App.4th at p. 394.) After the judgment was affirmed by Korea's intermediate appellate court, the judgment creditor filed a recognition action in California and obtained a writ of attachment on the judgment debtor's assets in this state. (*Id.* at pp. 394–395.) However, the appellate process in Korea was not finished. The judgment debtor moved for summary judgment in the recognition action on the ground that the Korean judgment was not final, conclusive, and enforceable in Korea because it was on appeal before the Korea Supreme Court. (*Id.* at p. 395.) He relied on article 471(1) of the

Korean code of civil procedure, which states that a Korean judgment " 'shall not become final and conclusive during the period in which an appeal may be filed or when a lawful appeal has been filed within the prescribed period.' " (*Korea Water, supra*, at p. 399.) The trial court did not dismiss the recognition proceeding but stayed it, pursuant to section 1713.6,[4] to await the Korea Supreme Court's ruling. (*Korea Water, supra*, at p. 395.) Later, after the Korea Supreme Court rejected the legal theory of liability on which the case had been tried, "canceled" the intermediate appellate court's judgment, and remanded the case for a new trial, the California trial court concluded the Korean judgment was no longer final, conclusive, and enforceable for purposes of allowing recognition here. (*Ibid.*) It therefore dismissed the recognition action and discharged the writ of attachment. (*Ibid.*)

The Court of Appeal agreed the recognition action was properly dismissed because the judgment at issue had been largely undermined by the decision of the Korea Supreme Court. (*Korea Water, supra*, 115 Cal.App.4th at p. 402.) The Korea Supreme Court's ruling had rendered the judgment "uncertain not only as to amount but also as to whether it is supported by a viable legal theory." (*Ibid.*) As a result, the Court of Appeal concluded the judgment was not sufficiently "conclusive," under section 1713.2, to be recognized in California. (*Korea Water, supra*, at pp. 402–403.)

However, the Court of Appeal also discussed whether the recognition action should have been dismissed previously because the judgment was not "final and conclusive" under Korean law when it was on appeal. (*Korea Water, supra*, 115 Cal.App.4th at pp. 399–400.)[5] The court did not consider Korea's law on finality determinative. It reasoned that doing so "would in effect be

---

[4] "If the defendant satisfies the court either that an appeal is pending or that he is entitled and intends to appeal from the foreign judgment, the court may stay the proceedings until the appeal has been determined or until the expiration of a period of time sufficient to enable the defendant to prosecute the appeal." (Former § 1713.6.)

[5] The *Korea Water* decision addressed the finality issue first, concluding that the judgment was sufficiently final despite contrary Korean law. The court went on, however, to decide that the judgment was not "conclusive" due to later developments in the Korea Supreme Court. The judgment creditor argued that under these circumstances the trial court should simply have stayed the California action pending resolution of the entire appellate process in Korea. (*Korea Water, supra*, 115 Cal.App.4th at p. 403.) The appellate court approved of this procedure with respect to finality, but not for conclusiveness. (See *ibid.* [noting a stay would be appropriate only if the case satisfied all of section 1713.2's "threshold" requirements].)

*Korea Water* appears to be the only published decision under the uniform act to find that a foreign judgment is "final" yet not "conclusive." It is not immediately apparent how the meaning of "final" differs from the meaning of "conclusive" in section 1713.2, but another provision of the UFMJRA is illuminating. Section 1713.4 states that a foreign judgment "is not conclusive" if it was rendered under a system without impartial tribunals or procedures compatible with due process, or if the foreign court lacked personal or subject matter jurisdiction. (Former § 1713.4, subd. (a)(1)–(3).) To the extent that "conclusive" differs from "final" in section 1713.2, these are the only statutory grounds for finding a foreign judgment

eviscerating the appellate caveat provision of section 1713.2." (*Korea Water*, *supra*, at p. 399.) In other words, the court interpreted section 1713.2 to mean that "California has chosen not to preclude recognition merely because the judgment is subject to appellate review" (*Korea Water*, *supra*, at p. 400), even if this result is directly contrary to the law of the country where the judgment was rendered.

Perhaps recognizing the practical difficulties this interpretation could impose—difficulties which were in fact presented in the case before it, when the Korea Supreme Court overturned the very judgment a California court was prepared to recognize—the Court of Appeal posited that the Legislature must have included the "appellate caveat" to give judgment creditors access to provisional remedies. (*Korea Water*, *supra*, 115 Cal.App.4th at pp. 401–402.) Under the court's view, a party could bring a recognition action to obtain provisional remedies to satisfy an appealed foreign judgment. The court could then stay the action until conclusion of the appellate process to avoid preserving a foreign judgment that might later be reversed. (*Id.* at p. 401.) The problem is there is no basis in legislative history, or elsewhere, to indicate that this process was contemplated or intended. On the contrary, as we have explained, the stated purpose of the uniform act was to satisfy the reciprocity concerns of foreign nations and encourage them to recognize judgments from the United States. (13 pt. II West's U. Laws Ann., *supra*, U. Foreign Money-Judgments Recognition Act, Prefatory Note, p. 40.) *Korea Water*'s interpretation of section 1713.2 appears to run counter to this goal of international cooperation because it would permit California courts to override foreign law with respect to the finality of a judgment pending on appeal.

■ We believe the better interpretation of section 1713.2 is the one reached by the Court of Appeal here. That is, California courts must recognize a foreign judgment, regardless of whether it has been appealed or is subject to appeal, so long as the judgment is final, conclusive, and enforceable in the country where it was rendered. The statutory language requiring recognition "even though an appeal therefrom is pending or [the judgment] is subject to appeal" (former § 1713.2) is not an exception to the requirements of finality, conclusiveness, and enforceability in the nation of origin. Rather, this language is meant to amplify the directive that finality, conclusiveness, and enforceability are to be assessed based on the law of the foreign jurisdiction where judgment was rendered. In other words, the "appellate

inconclusive. (Cf. *Kam-Tech Systems Ltd. v. Yardeni* (2001) 340 N.J.Super. 414, 422 [774 A.2d 644, 649] [under New Jersey's enactment of the uniform act, "courts must recognize a final foreign country judgment for money damages as 'conclusive between the parties,' [citation] unless the judgment debtor establishes one of the specific grounds for non-recognition that are enumerated in the Act . . ."].) The facts of this case do not require us to decide precisely how finality differs from conclusiveness under section 1713.2.

caveat" operates to ensure that foreign rules regarding finality are honored, even if they differ from the California approach.

A cursory review of cases under the uniform act reveals that foreign countries have different standards governing when a judgment is final. (Compare *S.C. Chimexim S.A. v. Velco Enterprises Ltd.* (S.D.N.Y. 1999) 36 F.Supp.2d 206, 213 [Romanian law regards a judgment as final despite a pending appeal] and *Dart v. Dart* (1997) 224 Mich.App. 146, 153–154 [568 N.W.2d 353, 357] [English law regards a judgment as final even though it is subject to appeal or subsequent modification] with *Mayekawa Manufacturing Co. v. Sasaki* (1995) 76 Wn.App. 791, 797 [888 P.2d 183, 187] [under Japanese law, the lodging of an appeal prevents a judgment from becoming final].) Indeed, even in this country, federal and state laws may differ about when a judgment is final, conclusive, and enforceable. While in California a judgment is not final and conclusive between the parties when it is on appeal, or for as long as it remains subject to appeal, the federal rule is contrary. (*Franklin & Franklin v. 7-Eleven Owners for Fair Franchising* (2000) 85 Cal.App.4th 1168, 1174 [102 Cal.Rptr.2d 770]; *Sandoval v. Superior Court* (1983) 140 Cal.App.3d 932, 936–937 [190 Cal.Rptr. 29]; see *Nathanson v. Hecker* (2002) 99 Cal.App.4th 1158, 1163, fn. 1 [121 Cal.Rptr.2d 773] [explaining difference between California and federal law on finality].) By clarifying that a foreign judgment must be recognized in California if it is regarded as final under the rendering country's law, even though it has been appealed or is subject to appeal, the Legislature apparently sought to deter a judicial impulse to apply California's own, potentially contrary, understanding of when a judgment becomes final. If a foreign jurisdiction's law provides that a judgment is final and conclusive despite an appeal, section 1713.2 *requires* California courts to recognize a judgment from that jurisdiction unless certain grounds for nonrecognition apply (see former §§ 1713.4–1713.5). However, in such cases section 1713.6 gives the court discretion to stay the recognition proceedings until all foreign appeals have concluded.

This interpretation is generally consistent with decisions reached in other states that have adopted the uniform act. For example, in *Dart v. Dart, supra*, 568 N.W.2d at page 357 (applying Michigan law) and *S.C. Chimexim S.A. v. Velco Enterprises Ltd., supra*, 36 F.Supp.2d at page 213 (applying New York law), the courts concluded foreign judgments could be recognized under the act, despite the fact that the judgments were on appeal (*Chimexim*) or subject to modification (*Dart*), because they were final under the laws of the countries where they were rendered.

Our interpretation is also consistent with the one decision we have found that addresses the precise issue before us, i.e., whether the uniform act permits recognition of a foreign judgment that is *not final* under the law of the foreign jurisdiction where judgment was entered. In *Mayekawa Manufacturing Co. v. Sasaki, supra,* 888 P.2d at pages 184–185, a party sought recognition of a Japanese money judgment that stated it could be " 'preliminarily' " enforced. However, the judgment resulted from a special proceeding to which objections had been lodged, and Japanese law provided that a judgment does not " 'become final and conclusive' " until the time for taking an appeal or lodging an objection has expired. (*Id.* at p. 187.) Based on Washington's version of the uniform act's applicability provision, which mirrors our section 1713.2,[6] the court concluded it could not recognize the Japanese judgment. (*Mayekawa Manufacturing Co. v. Sasaki, supra,* at p. 188.) Although the judgment was "preliminarily enforceable," it was not final and conclusive under Japanese law, and the Washington court considered this deficiency fatal to the recognition action. (*Id.* at pp. 187–188.) The court observed, however, that its ruling did not preclude a later application for recognition after the judgment became final and conclusive in Japan. (*Id.* at p. 189.)

■ To our knowledge, no court or other authority has reached the conclusion of *Korea Water* that the uniform act's requirement of a "final" judgment refers only to finality in the trial court, i.e., a judgment that is not interlocutory (*Korea Water, supra,* 115 Cal.App.4th at pp. 398–399). If the Legislature had intended to restrict the meaning of "final" in such a manner, it could have easily added the phrase "in the trial court" after "final." Moreover, this interpretation of "final" would require California courts to recognize *all* noninterlocutory foreign judgments, regardless of whether such judgments are considered final under the law of the country "where [they were] rendered" (former § 1713.2). The plain meaning of the statutory language requires California courts to look to the foreign jurisdiction's law to assess the finality and conclusiveness of a judgment. When foreign law holds that a judgment is not final if it is interlocutory *or* if it is subject to appeal, section 1713.2 requires a California court to honor this procedural rule. We see no basis in the statute for courts to distinguish between the types of finality for which foreign law will be considered.[7]

---

[6] "This chapter applies to any foreign judgment that is final and conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal." (Wn. Rev. Code, § 6.40.020.) The *Mayekawa* court quoted only the first part of this statute, however, omitting the words "even though an appeal therefrom is pending or it is subject to appeal." (See *Mayekawa Manufacturing Co. v. Sasaki, supra,* 888 P.2d at p. 187.)

[7] *Korea Water Resources Corp. v. Lee, supra,* 115 Cal.App.4th 389, is disapproved to the extent it is inconsistent with our decision.

It is also worth noting that the Legislature recently removed the "appellate caveat" language so heavily relied upon by Bezdikian here and by the *Korea Water* court. The newly enacted UFCMJRA (see *ante*, fn. 1) "applies to a foreign-country judgment to the extent that the judgment both: [¶] (1) Grants or denies recovery of a sum of money. [¶] (2) Under the law of the foreign country where rendered, is final, conclusive, and enforceable." (§ 1715, subd. (a).) Although provisions of the UFCMJRA apply only to recognition actions begun after the act's effective date of January 1, 2008 (§ 1724), legislative history indicates the new uniform act was intended primarily to clarify provisions of the earlier act that had led to confusion. (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 639 (2007–2008 Reg. Sess.) May 8, 2007, p. 2 ["[Sen. Bill No.] 639 would, according to the sponsors, update and clarify the UFMJRA and correct problems created by the courts' interpretations of various provisions of that Act over the years since its adoption in 1967"].)

■   Manco submitted evidence indicating the judgment in this case was not final under Qatari law until May 23, 2000, when the Qatari appellate court issued an amended judgment.[8] Under section 1713.2, a cause of action to recognize the judgment could not have been maintained before its finality in 2000. Accordingly, Manco's May 20, 2004 complaint seeking recognition of the judgment was timely even under the four-year statute of limitations of section 343, and the trial court erred in granting summary judgment. As we discuss next, however, section 343 does not furnish the limitations period for recognition actions.[9]

## II.   Statute of Limitations

We last considered the statute of limitations applicable to an action upon a foreign judgment in 1891. In *Dore v. Thornburgh, supra,* 90 Cal. 64, the plaintiff brought an action "to recover upon" a judgment issued by an English court in 1885. (*Id.* at p. 65.) We rejected the defendant's argument that the complaint was barred by the two-year statute of limitations for an action upon

---

[8] At oral argument, Bezdikian's counsel emphasized that a writ of execution would have been available in Qatar upon entry of the trial court's judgment. However, this fact establishes only when the judgment became enforceable under Qatari law. Counsel conceded his argument equates finality with enforceability, but the UFMJRA explicitly treats them as separate concepts. A foreign judgment must be "final *and* conclusive *and* enforceable" to be recognized here. (Former § 1713.2, italics added.)

[9] Our resolution of the statute of limitations question is an independent, alternative ground for affirming the decision of the Court of Appeal. (See *Bank of Italy etc. Assn. v. Bentley* (1933) 217 Cal. 644, 650 [20 P.2d 940]; *Greyhound Lines, Inc. v. County of Santa Clara* (1986) 187 Cal.App.3d 480, 485 [231 Cal.Rptr. 702].)

a contract. Instead, observing that an action on a foreign judgment "is not specifically provided for by any other section of the statute of limitations," we determined the claim was governed by the catchall limitations period of section 343. (*Dore v. Thornburgh, supra,* at p. 67.) Section 343 stated then, as it does now: "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

■ In 1967, more than 75 years after our decision in *Dore v. Thornburgh, supra,* 90 Cal. 64, the Legislature enacted the provisions of the UFMJRA. The act does not specify a statute of limitations for actions to recognize foreign judgments. It simply provides that, unless certain specified grounds for nonrecognition apply, "a foreign judgment meeting the requirements of Section 1713.2 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit, except that it may not be enforced pursuant to the provisions of Chapter 1 (commencing with Section 1710.10) of this title." (Former § 1713.3.) The exception refers to the Sister State Money Judgments Act, which provides an expedited procedure for registering and enforcing sister state judgments in California. (§§ 1710.10–1710.65; *Bank of America v. Jennett* (1999) 77 Cal.App.4th 104, 114–115 [91 Cal.Rptr.2d 359].)

As initially enacted in 1967, section 1713.3 stated only that foreign money judgments were enforceable in the same manner as sister state judgments. (Stats. 1967, ch. 503, § 1, p. 1847.) At that time, " '[t]he exclusive way to enforce a sister state money judgment in California [was] to bring an action on the judgment . . . . This traditional manner of enforcing judgments of sister states require[d] all the normal trappings of an original action.' (11 Cal. Law Revision Com. Rep. (1973), p. 457.)" (*Renoir v. Redstar Corp., supra,* 123 Cal.App.4th at pp. 1150–1151.) When the Legislature passed the Sister State Money Judgments Act in 1974, it amended section 1713.3 to clarify that judgments secured in foreign countries cannot be enforced using these new expedited procedures. (Stats. 1974, ch. 211, § 5, p. 409.) Rather, foreign money judgments must "be enforced with 'all the normal trappings of an original action' that had existed before in connection with the enforcement of sister state judgments. [Citations.]" (*Renoir v. Redstar Corp., supra,* at p. 1151.)

There is an analytical difference between *recognition* of a foreign judgment and *enforcement* of that judgment. A foreign judgment must be recognized before it is enforced, making enforcement, perhaps, the most common reason for filing such an action. Of course, recognition may also be sought so that a

party may rely on res judicata or collateral estoppel principles unrelated to enforcement of a money judgment. (See Rest.3d Foreign Relations Law of the U.S., § 481, com. b, p. 595; *Renoir v. Redstar Corp., supra,* 123 Cal.App.4th at p. 1150.) The parties acknowledge this difference, but they draw different conclusions about its meaning for purposes of section 1713.3.

Manco notes that California's UFMJRA does not include a statute of limitations but requires only that a foreign judgment be "final and conclusive and *enforceable where rendered*" to be subject to recognition. (Former § 1713.2, italics added.) This requirement ensures that a foreign judgment will not be recognized in California if it is unenforceable under the statute of limitations, or on any other basis, in the country where it was rendered. Manco argues the absence of a limitations period in the UFMJRA reflects a legislative intent that *no* California statute of limitations can bar recognition of a foreign judgment.

The Florida Supreme Court adopted this reasoning in interpreting its version of the uniform act. (*Nadd v. Le Credit Lyonnais, S.A.* (Fla. 2001) 804 So.2d 1226 (*Nadd*).) The court explained that "the UFMJRA contemplates a two-step process before the judgment can be collected in this state. First, the judgment must be recognized; then the judgment creditor must institute enforcement proceedings." (*Id.* at p. 1231.) Because the act does not list expiration of the forum state's statute of limitations as a ground for nonrecognition of a foreign judgment, the *Nadd* court concluded no Florida statute of limitations applies to the recognition of foreign judgments under its act. (*Id.* at p. 1233 ["the only limitation applicable to the recognition of a foreign money judgment is that the judgment be enforceable where rendered; Florida's statute of limitations does not affect the recognition portion of a UFMJRA action"].) The relevance of *Nadd's* holding to our case is questionable because, unlike California, Florida has adopted a bifurcated approach. Expedited procedures permit the *recognition* of a foreign judgment without the filing of a civil action. (See *id.* at pp. 1230–1231 [discussing the recognition procedure in Fla. Stat., § 55.604].) However, Florida apparently requires the bringing of a traditional action to secure *enforcement.* (See *Nadd, supra,* at p. 1232.) The Florida Supreme Court did apply a statute of limitations to these enforcement actions. Based on a provision requiring enforcement of a recognized foreign judgment in the same manner as a judgment issued in Florida,[10] the court concluded an action to enforce a

---

[10] Florida's version of the uniform act differs from California's in this regard, in that section 1713.3 authorizes enforcement of a recognized foreign judgment "in the same manner as the judgment of a sister state which is entitled to full faith and credit . . . ." (Former § 1713.3; but see § 1719, subd. (b) [new UFCMJRA provides that recognized foreign judgment is "[e]nforceable in the same manner and to the same extent as a judgment rendered in this state"].)

foreign judgment must be filed within Florida's 20-year limitations period for enforcement of domestic judgments. (*Nadd, supra,* at pp. 1232–1233.)[11]

California has not enacted an expedited procedure for the registration of foreign judgments. Rather, a party seeking recognition of a foreign judgment under the UFMJRA must file a civil action. (*Renoir v. Redstar Corp., supra,* 123 Cal.App.4th at p. 1151.)[12] In California, "[c]ivil actions, *without exception,*" must be commenced within a statutorily prescribed limitations period. (§ 312, italics added.) Because the UFMJRA does not set forth its own limitations period for actions to recognize foreign judgments, we must decide whether the Legislature intended that recognition actions be governed by a specific statute of limitations or fall under the catchall limitations period of section 343.

■ Once a foreign judgment is recognized, it is enforceable in the same manner as a sister state judgment (former § 1713.3) or domestic judgment (see § 1710.65 [a registered sister state judgment has same force and effect as the judgment of a California court]). An action to enforce a sister state judgment is subject to a 10-year statute of limitations. (§ 337.5, subd. 3.) The period of enforceability of a domestic judgment is also 10 years (§ 683.020), although this period may be extended by renewal of the judgment (see § 683.110 et seq.). In our view, section 1713.3's provision that a foreign judgment meeting the requirements for recognition "is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit" conveys a legislative intent that actions to enforce foreign judgments be subject to the same procedural requirements and defenses as actions to enforce judgments from other states. One such requirement is section 337.5's 10-year statute of limitations. Even Bezdikian concedes that, under the relevant statutes, a judgment creditor has 10 years to *enforce* a foreign judgment. The question he raises is whether the same 10-year limitations period properly applies to an action seeking to *recognize* the foreign judgment in the first place. Bezdikian argues the Legislature's failure to specify a statute of limitations for recognition actions, as opposed to

---

[11] Manco also relies on the decision of an Illinois appellate court that enforcement of a foreign judgment is not subject to a statute of limitations. (*Pinilla v. Harza Engineering Co.* (2001) 324 Ill.App.3d 803 [257 Ill.Dec. 921, 755 N.E.2d 23].) However, the court in *Pinilla* was construing the Uniform Enforcement of Foreign Judgments Act (UEFJA), a uniform act governing enforcement of nonforum judgments that California has *not* adopted. (See 755 N.E.2d at pp. 25–26, 28–29.) Because the Illinois Legislature had amended this act to remove a requirement of timeliness, *Pinilla* inferred a legislative intent that no statute of limitations apply to enforcement actions. (*Id.* at pp. 28–29.) No analogous legislative action has occurred in California; therefore, *Pinilla* is of no assistance.

[12] This is no longer always the case under the new UFCMJRA. Section 1718, subdivision (b) allows the issue of recognition to be raised "by counterclaim, cross-claim, or affirmative defense" if recognition is sought in a pending action. When recognition "is sought as an original matter," however, the issue must still be raised by filing an action. (§ 1718, subd. (a).)

enforcement actions, means these actions must still be subject to the four-year limitations period of section 343, as we concluded long ago in *Dore v. Thornburgh, supra*, 90 Cal. at page 67.

We disagree. The distinction Bezdikian seeks to draw between a recognition action and an enforcement action is artificial and misleading when applied in the statute of limitations context. Although California does not have expedited procedures for registration of a foreign judgment, the law of this state does not require a judgment creditor to file two successive actions, first for recognition and then for enforcement, in order to recover on a foreign judgment. When an action is brought on a foreign money judgment, enforcement, i.e., recovery of the amount of the judgment, is most frequently the ultimate goal. Actions such as the one before us are commonly called domestication actions because the relief they seek is entry of a California judgment for the amount of the foreign judgment. This "domestication" of the foreign judgment enables the judgment creditor to pursue all the enforcement avenues available for recovering domestic money judgments. (See, e.g., *Korea Water, supra*, 115 Cal.App.4th at p. 395 [action sought California judgment for money owed on Korean judgment]; see also *Dore v. Thornburgh, supra*, 90 Cal. at p. 65 [action sought "to recover upon" an English judgment].) Although it might be theoretically possible for a party to bring a recognition action without seeking to enforce the foreign judgment, the parties recognize enforcement is almost always the ultimate goal. Certainly, the present case involves more than a simple claim for recognition. Manco's complaint seeks recognition of the Qatari judgment *for the purpose of enforcing it*.

■ Based on the directive of section 1713.3 that foreign judgments be enforced in the same manner as sister state judgments, we conclude the 10-year statute of limitations applicable to actions upon sister state judgments (§ 337.5) also applies to actions upon foreign judgments. This is so regardless of whether the action is styled as a claim for "recognition" or "enforcement" or "domestication." Under section 1713.2, a judgment creditor may seek recognition of a foreign money judgment as soon as the judgment is final, conclusive, and enforceable under the laws of the country where it was rendered. At that point, a cause of action for recognition accrues, and the judgment creditor must bring any claim for recognition or enforcement of the judgment within 10 years. (§ 337.5; former § 1713.3.)

Considering that the Legislature has given judgment creditors 10 years to enforce domestic and sister state judgments, and has also indicated an intent to apply this 10-year period to the enforcement of foreign judgments (see former § 1713.3), it would make no sense to hold that a shorter limitations period applies to the preliminary proceedings necessary to recognize the judgment. In a typical domestication action, Bezdikian's view would require

the judgment creditor to file an action within four years after judgment was entered in the foreign country *even though* a domesticated judgment is enforceable for 10 years under sections 1713.3 and 337.5. This approach would be cumbersome, expensive, and potentially a trap for the unwary. Application of section 343's shorter limitations period would also defeat the Legislature's intent that foreign money judgments be enforceable in the same manner as sister state judgments (former § 1713.3) in all cases where enforcement of the judgment is the ultimate aim. Subjecting actions to recognize foreign judgments to a shorter limitations period than California allows for actions upon domestic judgments or sister state judgments would also undermine the reciprocity goal of the UFMJRA. If recognition of a final, conclusive, and enforceable foreign judgment is to be barred by a state's statute of limitations, we should apply the same limitations period controlling other judgments. "Using the limitations periods that are generally applicable to the forum state's own judgments best assures reciprocity in the recognition and enforcement of our judgments abroad and gives foreign judgments uniform and fair treatment in [California] courts." (*Nadd, supra,* 804 So.2d at p. 1233.)

Amicus curiae Northrop Grumman posits reasons why the Legislature may have wished to place a four-year limit on an action to recognize a foreign judgment even as it allowed a longer time period, i.e., 10 years, for enforcement of the same judgment. The Legislature may have been especially concerned about a judgment debtor's ability to prove defenses to a foreign judgment, for example, or the Legislature may have been concerned about applying different statutes of limitations to foreign money judgments as opposed to other foreign judgments not covered by the UFMJRA. These asserted concerns are not expressed in the legislative history of the UFMJRA, however, and they are inconsistent with the Legislature's codification of a 10-year statute of limitations in the new UFCMJRA.

Section 1721, which went into effect January 1, 2008, provides: "An action to recognize a foreign-country judgment shall be commenced within the earlier of the time during which the foreign-country judgment is effective in the foreign country or 10 years from the date that the foreign-country judgment became effective in the foreign country." Thus, a foreign judgment may be recognized for as long as it is effective in its country of origin up to a maximum of 10 years. The new uniform act establishes a limitations period of 15 years (13 pt. II West's U. Laws Ann. (2008 supp.) U. Foreign-Country Money Judgments Recognition Act, § 9, p. 18); however, our Legislature reduced this period to 10 years to be consistent with the 10-year period of enforceability for domestic and sister state judgments. (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 639 (2007–2008 Reg. Sess.) May 8, 2007, p. 16 [suggesting action to recognize a foreign judgment should have a

10-year statute of limitations "just like all other state judgments" (capitalization omitted)].) Although legislative history surrounding enactment of the new UFCMJRA is not controlling here, the Legislature's expressed concern for uniformity supports our conclusion that actions on foreign judgments should be subject to the same 10-year limitations period that applies to all other judgments.

## DISPOSITION

The judgment of the Court of Appeal is affirmed, and the case is remanded for further proceedings in the trial court.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—This case raises two issues under a now repealed law, the Uniform Foreign Money-Judgments Recognition Act (Code Civ. Proc., former § 1713.1 et seq., repealed by Stats. 2007, ch. 212, eff. Jan. 1, 2008; hereafter the former act). The first issue is whether, within the meaning of a provision of that former act, a foreign country judgment is "final" while it is on appeal in the foreign jurisdiction. On that issue, the majority holds, as I understand it, that the term "final" as used in the former act has no fixed meaning, and that the foreign jurisdiction's law must be consulted to determine both the meaning of the term "final" and whether, applying that definition, the foreign judgment is final while on appeal. I disagree. I conclude that as used in the former act the term "final" means not requiring further action other than enforcement in the rendering court (that is, ordinarily, the trial court) and that the foreign jurisdiction's law should be consulted only to determine whether, applying that definition of finality, the foreign judgment is final while on appeal.

The second issue is the statute of limitations that applied to an action brought under the former act. On that issue, the majority holds that the statute of limitations was 10 years, the same as for an action on a sister state judgment. Here also, I disagree. I conclude that an action on a foreign-country judgment under the now repealed act was governed by the four-year "catch all" limitations period of Code of Civil Procedure section 343.

Although I disagree with the majority's conclusions on both of these issues, I agree with its disposition, which effectively remands the matter for further proceedings in the trial court. As I will explain, I agree that, on the present record, defendant Bezdikian is not entitled to summary judgment.

## I

Plaintiff Manco Contracting Company (W.L.L.) (Manco) sued defendant Krikor Bezdikian (a former partner of Manco) in Qatar, a Persian Gulf

emirate. In November 1997, the Qatar trial court entered judgment against Bezdikian for some 15 million Qatari riyals (around $4.2 million). After filing an appeal, Bezdikian relocated to Lebanon and then to California. In May 2000, Qatar's appellate court rendered its decision reducing the amount of the award to 13.6 million riyals (around $3.76 million), plus expenses and attorney fees.

In May 2004, Manco brought this action on the Qatari judgment in Los Angeles Superior Court. Bezdikian moved for summary judgment on the ground that the action was untimely. He argued that the statute of limitations was four years, that the limitations period began running in 1997 when the Qatar trial court entered judgment, and that it expired in 2001. Manco argued, to the contrary, that the applicable statute of limitations was 10 years, the same as for an action on a sister state judgment (Code Civ. Proc., § 337.5), because a provision of the former act stated that a foreign-country judgment was "enforceable in the same manner as the judgment of a sister state" (*id.,* former § 1713.3). Manco also argued, in the alternative, that no statute of limitations applied. Finally, Manco argued that it was seeking recognition of the appellate court's judgment, which had superseded the trial court's judgment, and that the action on the appellate court's judgment, having been brought less than four years after it was rendered, was timely under any potentially applicable limitations period. The parties each submitted an expert's declaration describing various aspects of Qatari law. The trial court agreed with Bezdikian that the action was time-barred, and it granted summary judgment for Bezdikian. Manco appealed.

The Court of Appeal reversed, concluding that the statute of limitations did not begin to run if, under Qatari law, the trial court's judgment was not final while on appeal, and that the expert declarations had raised a triable issue of fact on that point. The Court of Appeal declined to decide whether the limitations period was four years or 10 years.

## II

In 1962, the National Conference of Commissioners on Uniform State Laws (Commissioners) promulgated the Uniform Foreign Money-Judgments Recognition Act (1962 Uniform Act). They explained that because many foreign countries' courts applied a rule of reciprocity, codification of state rules on recognizing and enforcing foreign country judgments would increase the chances that those foreign courts would recognize and enforce our state court judgments. In 1967, California adopted the 1962 Uniform Act as Code of Civil Procedure sections 1713 to 1713.8. (Stats. 1967, ch. 503, § 1, p. 1847.) One of the provisions at issue here, former section 1713.2 of the Code of Civil Procedure (see § 2 of the 1962 Uniform Act), stated: "This chapter

applies to any foreign judgment that is *final* and conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal." (Italics added.) The first question to be decided is the meaning of the term "final" in this provision.

Under California law, the word "final" has various meanings as applied to a judgment. (See generally 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 7, pp. 551–552 [listing various meanings of "final judgment"].) In one sense, all California state court judgments are final because finality is part of the definition of a judgment. (See Code Civ. Proc., § 577 ["A judgment is the final determination of the rights of the parties in an action or proceeding."].) In another sense, no California judgment is ever final because a judgment can always be modified or revised to correct clerical error or set aside for extrinsic fraud or for lack of subject matter jurisdiction. (See *Olivera v. Grace* (1942) 19 Cal.2d 570, 573–576 [122 P.2d 564].) As applied to judgments, a common understanding of the term "final" is "not subject to being changed or set aside to correct ordinary error of fact or law, or for abuse of discretion." Even under that definition, however, there remains an ambiguity because a judgment may be final as to the trial court (once the trial court has lost jurisdiction to grant a new trial, a judgment notwithstanding the verdict, or a statutory motion to vacate) but not as to the appellate courts, and a Court of Appeal decision may be final as to that court but not as to the California Supreme Court (see Cal. Rules of Court, rules 8.264(b), 8.512(b)–(c)).

The term "final" in former section 1713.2 of the Code of Civil Procedure might have any of these meanings, or perhaps another meaning altogether, but like all statutory terms it must have some definite meaning. The majority appears to conclude, however, that the term "final" in former section 1713.2 has no single fixed meaning but instead, chameleonlike, it takes on whatever meaning the term has in the law of the foreign country where the judgment to be enforced was rendered. I do not understand how this can be so.

If the foreign jurisdiction's laws are similar to California's, the term "final," as applied to a judgment or decision, will be ambiguous, carrying multiple possible meanings. How is a court in California to determine which of these meanings to apply? The problem is even more intractable when, as here, the foreign jurisdiction's law is written in a language other than English. (The official language of Qatar is Arabic.) Before an expert can determine whether the foreign-country judgment is "final" within the meaning of former section 1713.2 of the Code of Civil Procedure, the term "final" must be translated into the foreign language, and this can be done only if the term is first given a single, unambiguous meaning.

Here, both parties submitted declarations from experts on the law of Qatar. Defendant Bezdikian's expert properly refrained from characterizing the

Qatari trial court judgment at issue as final or not final. Instead, he explained that the judgment of the Grand Civil Court of Qatar in favor of plaintiff Manco and against Bezdikian was dated November 16, 1997, that it "conclusively adjudicated the rights of both parties in the matters pending before the Grand Civil Court," that it was immediately enforceable, that it could be and was appealed to the court of appeal in Qatar, that the appeal did not revoke or stay the judgment, and that after the appeal was taken Manco remained free to initiate enforcement proceedings, although the court of appeal had discretion to grant an application by Bezdikian to stay enforcement.

Manco's expert, in his declaration, did not take issue with this description of Qatari law and the status of the judgment against Bezdikian rendered by the Grand Civil Court of Qatar. Manco's expert, however, gave his opinion that "as a matter of Qatari law, the trial court judgment in this matter was not final, nor was any judgment final until the [Qatari] Court of Appeal entered its judgment on May 23, 2000." He further explained that "unless made final by agreement or statute, a judgment under Qatari law by definition becomes final only when the time for appeal has expired or the Court of Appeal has entered its judgment." (Original underscoring.) Applying his understanding of finality under Qatari law, the expert concluded that the Qatari judgment "did not become final until the [Qatari] Court of Appeal entered its judgment on May 23, 2000." He also stated that, under Qatari law, when the Qatari court of appeal has entered its judgment, "the appellate judgment completely supersedes the trial court judgment."

From a reading of this declaration, it is apparent that to Manco's expert "final" meant not subject to reversal, modification, or correction by any court for ordinary errors of law or fact or for abuse of discretion, or something very close to that definition. Manco's expert does not explain how he arrived at that definition, and his conclusion about the finality of the Qatari grand civil court's judgment would no doubt be altered if he were to apply a substantially different definition of finality.

No inquiry into Qatari law can ever determine the meaning of "final" in former section 1713.2 of the Code of Civil Procedure (§ 2 of the 1962 Uniform Act). Instead, the meaning of the California statute presents an issue of statutory construction for California courts to resolve using California law.

A rather strong indication of what "final" means in former section 1713.2 of the Code of Civil Procedure (§ 2 of the 1962 Uniform Act) is the language of that provision itself. It stated: "This chapter applies to any foreign judgment that is final and conclusive and enforceable where rendered *even though an appeal therefrom is pending or it is subject to appeal.*" (*Ibid.,* italics added.) By stating that the pendency of an appeal does not preclude a

determination of finality, the language implies that the term "final" refers to finality in the trial court, and not to finality as to appellate courts as well. This interpretation is reinforced by former section 1713.6 of the Code of Civil Procedure (§ 6 of the 1962 Uniform Act), which gave a California court the power to stay the recognition action pending the outcome of an appeal in the foreign jurisdiction.

This definition of the word "final" is consistent with an official comment to the Uniform Foreign-Country Money Judgments Recognition Act (the revised act), which California adopted in 2007, effective January 1, 2008, as Code of Civil Procedure sections 1713 to 1724, superseding the former act.[1] (See Stats. 2007, ch. 212, § 2.) The purpose of the revised act, according to a Commissioners' note, was "not to depart from the basic rules or approach of the 1962 Act, which have withstood well the test of time, but rather to update the 1962 Act, to clarify its provisions, and to correct problems created by the interpretation of the provisions of that Act by the courts over the years since its promulgation." (13 pt. II West's U. Laws Ann. (2008 supp.) U. Foreign-Country Money Judgments Recognition Act, Prefatory Note, pp. 5-6.) Like section 2 of the 1962 Uniform Act (Code Civ. Proc., former § 1713.2), section 3 of the revised act (Code Civ. Proc., § 1715, subd. (a)(2)) requires that the foreign-country judgment be "final, conclusive, and enforceable." The official comment to section 3 states: "In order to come within the scope of this Act, a foreign-country judgment must be final, conclusive, and enforceable under the law of the foreign country in which it was rendered. This requirement contains three distinct, although inter-related concepts. *A judgment is final when it is not subject to additional proceedings in the rendering court other than execution.* A judgment is conclusive when it is given effect between the parties as a determination of their legal rights and obligations. A judgment is enforceable when the legal procedures of the state to ensure that the judgment debtor complies with the judgment are available to the judgment creditor to assist in collection of the judgment." (13 pt. II West's U. Laws Ann., *supra*, U. Foreign-Country Money Judgments Recognition Act, com. 3 to § 3, pp. 9–10, italics added.)

In summary, the former act provided that an appeal from the foreign-country judgment does not preclude a finding of finality, and it allowed the California court to stay the recognition action while that appeal is pending. Also, the revised act's official comment states that a judgment is final when it is not subject to additional proceedings in the rendering court other than execution. From these circumstances, I conclude that the term "final" in former section 1713.2 of the Code of Civil Procedure refers to finality in the foreign jurisdiction's rendering court (that is, ordinarily, the trial court) and

---

[1] The former act continues to apply to actions commenced before January 1, 2008. (Code Civ. Proc., § 1724.)

means that the judgment is not subject to additional proceedings other than execution in the foreign-country court that rendered the judgment.

## III

More than a century ago, in *Dore v. Thornburgh* (1891) 90 Cal. 64 [27 P. 30], this court held that an action on a foreign-country judgment is governed by the four-year "catch all" limitations period of Code of Civil Procedure section 343, which governs actions for which no other limitations period is specified. This court has never overruled that holding, and the Legislature has abrogated it only as to actions filed after January 1, 2008. I conclude that it remains controlling authority on this point of law for actions filed before that date.

In reaching a different conclusion, the majority relies on former section 1713.3 of the Code of Civil Procedure (§ 3 of the 1962 Uniform Act), which, as amended, provided: "Except as provided in Section 1713.4, a foreign judgment meeting the requirements of Section 1713.2 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign judgment is *enforceable in the same manner as the judgment of a sister state* which is entitled to full faith and credit, except that it may not be enforced pursuant to the provisions of Chapter 1 (commencing with Section 1710.10) of this title." (As amended by Stats. 1974, ch. 211, § 5, p. 409, italics added.)

In their "Prefatory Note" to the 1962 Uniform Act, the Commissioners stated: "The Act does not prescribe a uniform enforcement procedure. Instead, the Act provides that a judgment entitled to recognition will be enforceable in the same manner as the judgment of a court of a sister state which is entitled to full faith and credit." (13 pt. II West's U. Laws Ann. (2002) U. Foreign Money Judgments Recognition Act, Prefatory Note, p. 41.) Accordingly, the provision on which the majority relies was intended to specify what happens *after* the state court recognizes the foreign-country judgment. It concerns the *enforcement mechanisms* available to the judgment creditor, not the statute of limitations for bringing the recognition action. An official comment to section 9 of the revised act reinforces this point by stating that "[t]he 1962 Act did not contain a statute of limitations." (13 pt. II West's U. Laws Ann. (2008 supp.) U. Foreign-Country Money Judgments Recognition Act com. to § 9, p. 18.) Indeed, the Commissioners recognized that one of "the more significant issues that have arisen under the 1962 Act" was "the need to establish a statute of limitations for recognition actions." (13 pt. II West's U. Laws Ann. (2002) U. Foreign Money Judgments Recognition Act, Prefatory Note, p. 6.) Under section 9 of the revised act, which California has adopted for actions commenced after January 1, 2008, an action on a

foreign-country judgment must "be commenced within the earlier of the time during which the foreign-country judgment is effective in the foreign country or 10 years from the date that the foreign-country judgment became effective in the foreign country." (Code Civ. Proc., § 1721.)

Had the Legislature, when it adopted the former act, intended to abrogate the four-year statute of limitations that this court established in *Dore v. Thornburgh, supra,* 90 Cal. 64, it would have used equally plain language. It might have said, for example, that the foreign judgment is enforceable "in the same manner *and within the same time*" as a sister state judgment. (See, e.g., Code Civ. Proc., § 597 [using similar language for appeals from interlocutory judgments on special defenses].) Or the Legislature could have amended Code of Civil Procedure section 337.5 to make its 10-year limitations period applicable to actions on foreign judgments as well as to actions on sister state judgments. It took none of these actions.

I therefore conclude that until it enacted Code of Civil Procedure section 1721 in 2007, which codified the revised act's statute of limitations, the Legislature did not abrogate *Dore v. Thornburgh, supra,* 90 Cal. 64, under which the four-year "catchall" limitations period of Code of Civil Procedure section 343 applied to actions on foreign-country judgments, including those brought under the former act.

## IV

I now apply these conclusions about the former act to the facts before the trial court when it ruled on Bezdikian's motion for summary judgment. Manco's complaint sought enforcement of two foreign-country judgments: the judgment of the Grand Civil Court of Qatar and the judgment of the Qatari court of appeal.

The judgment of the Grand Civil Court of Qatar for Manco and against Bezdikian was final, conclusive, and enforceable, within the meaning of former section 1713.2 of the Code of Civil Procedure, when it was rendered on November 16, 1997, and the statute of limitations for an action on that judgment in California began to run on that date. The applicable statute of limitations at that time was the "catchall" four-year provision (Code Civ. Proc., § 343), which expired in November 2001, and Manco's action, commenced thereafter in May 2004, was barred by the statute of limitations insofar as it sought enforcement of the Qatari grand civil court's judgment.

Manco appealed from the judgment of the Grand Civil Court of Qatar, and the Qatari court of appeal issued its decision on that appeal on May 23, 2000. According to the declaration of Manco's expert on Qatari law, the Qatari court of appeal's decision took the form of a judgment that completely superseded the judgment of the grand civil court. If the Qatari court of appeal's decision is properly regarded as a new, separate, and enforceable judgment, its rendition commenced a new four-year limitations period, and Manco's California action, filed on May 20, 2004, was timely under the former act as an action on that judgment. On this basis, I agree with the majority that the matter should be remanded to the trial court for further proceedings.