Filed 5/15/26  Alvarez v. Ramirez CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BALTHASAR ALVAREZ et al.,<br><br>　　　Plaintiffs and Respondents,<br><br>v.<br><br>NOEL RAMIREZ,<br><br>　　　Defendant and Appellant. | A172234<br><br>(Alameda County<br>Super. Ct. No. 22-CV-018329) |

Noel Ramirez (defendant) appeals from an order denying his motion to set aside a default judgment awarding substantial damages to four of his former tenants (plaintiffs).  (Civ. Proc. Code, § 473, subd. (d) (§ 473(d)); statutory references are to this code unless otherwise indicated.)  Defendant contends the judgment is void for lack of jurisdiction or, alternatively, the trial court abused its discretion by denying him relief from default.  We affirm.

**BACKGROUND**

*Plaintiffs' Complaint*

In September 2022, plaintiffs filed their operative complaint seeking damages for harm they suffered while living at a property on Wildwood Street in Hayward that was owned by defendant (the Wildwood property).  According to the complaint, each plaintiff entered into a verbal agreement with defendant to rent a different room at the Wildwood property, which had

1

three bedrooms and a living room that was walled off to form two additional bedrooms. Plaintiffs alleged they were all "victims of [a] consistent pattern of harassment, intimidations, and other violations from Defendant." Defendant's conduct allegedly included invading plaintiffs' privacy by entering their rooms without notice, rifling through and taking their property, and installing a camera in the kitchen. Plaintiffs alleged that defendant called them offensive names, habitually threatened eviction, destroyed their property, and intimidated them into complying with unreasonable demands. The complaint contains specific allegations regarding each plaintiff's interactions with defendant, which we summarize briefly.

Plaintiff Morales moved into the garage of the Wildwood property, pursuant to a verbal agreement to pay rent of $1,300 a month. Defendant accepted Morales's payments but never provided the receipts Morales requested. The garage was not permitted or suitable for habitation, and it flooded during heavy rains. Defendant allegedly entered without notice on several occasions and when Morales protested, defendant "used intimidation tactics, physical violence, and aggressive behavior against Morales." He also "filed false criminal allegations against Morales," causing Morales to suffer a weekend in jail before he was released without charges. In addition, defendant allegedly took Morales's property and documents, attempted to withdraw $1,300 from Morales's bank account, and cut the cable to Morales's satellite dish.

Plaintiff Martinez moved into an unpermitted bedroom at the Wildwood property, pursuant to a verbal agreement to pay monthly rent of $800 in cash. Defendant accepted Martinez's payments without providing the receipts Martinez requested. Subsequently, Martinez moved into the

2

master bedroom and agreed to pay $1,100 in monthly rent. Defendant allegedly entered Martinez's room without notice or permission, took photographs, and sent Martinez texts from the room. When Martinez returned after defendant had been there, he discovered property and money were missing. Defendant allegedly changed the locks on Martinez's door multiple times, and then removed the door entirely before Martinez finally moved out.

Plaintiff Alvarez moved into one of the bedrooms carved out of the living room, pursuant to a verbal agreement to pay rent of $500 a month. Defendant accepted Alvarez's rent payments, never providing the receipts Alvarez requested. A few months after Alvarez moved in, defendant increased the rent to $800 a month, without prior notice. Other alleged conduct included vandalizing Alvarez's car, and throwing away his food and dishes. In addition, defendant allegedly committed several acts of harassment to entice Alvarez to move out, which included removing Alvarez's door, and demolishing the walls to his unpermitted bedroom, destroying Alvarez's clothes and property in the process. Thereafter, defendant allegedly tore down sheets Alvarez put up for privacy, despite knowing Alvarez's wife was recovering from treatment for multiple sclerosis.

Plaintiff Inocencio moved into the second bedroom that had been carved out of the living room, pursuant to a verbal agreement to pay rent of $850 a month. Defendant accepted Inocencio's rent payments but never provided the receipts Inocencio requested. While Inocencio lived at the property, defendant allegedly stole Inocencio's construction tools that were valued at $750, and took property from Inocencio's locked room, having entered without permission. In April 2022, Inocencio was forced to vacate the Wildwood property after defendant demolished the walls to Inocencio's room without

providing any prior notice. The demolition started at around 8:30 a.m., plaintiffs alleged, and drywall fell on Inocencio, who was still in bed at the time. Inocencio left immediately, and when he returned the next day his electronics, documents, and other personal items were missing.

Plaintiffs incorporated their factual allegations into twelve causes of action, which included claims for constructive and wrongful eviction, breach of contract, conversion, negligence, violations of the City of Hayward's Residential Rent Stabilization and Tenants Protection Ordinance, and elder abuse as to plaintiff Morales. Plaintiffs' prayer for relief included requests for general damages of $100,000 for each plaintiff, in addition to compensation for property damages; special damages of $30,000 for each plaintiff; additional damages according to proof; attorney fees and costs.

### *Requests for Entry of Default and a Default Judgment*

On May 3, 2023, plaintiffs filed a request for entry of default against defendant, which was entered by the clerk that same day. On July 5, plaintiffs filed their request for a court judgment against defendant in the amount of $612,355, which included general and special damages as well as attorney fees. The request was supported by declarations and statements of damages for each plaintiff.

On September 1, the court rejected plaintiffs' request for a default judgment on the ground that they failed to establish reasonable diligence to justify substitute service of their summons and complaint on defendant. (Citing § 415.20, subd. (b) (§ 415.20(b)); Sup. Ct. Alameda County, Local Rules, rule 3.50.) The rejection notice directed that any new application must include the mandatory request for entry of default forms, and that plaintiffs should resubmit their supporting documents, "plus any additional documents that the court need[ed] to consider."

4

On September 25, plaintiffs filed a new request for a default judgment along with their declarations and damages statements. The request for entry of default form reflects that a deputy clerk at the superior court checked a box indicating that default had been entered "as requested," without specifying a date.

On October 9, plaintiffs filed two proofs of service and an affidavit of reasonable diligence pertaining to the service of their summons, complaint and related documents on defendant. The first proof of service reflects that on February 28, 2023, defendant was served by substitute service at an address on Mission Boulevard in Hayward, which is a UPS store. The registered process server served defendant by leaving copies of the documents with the store manager. The second proof of service reflects that on March 1, 2023, copies of the summons, complaint, and related documents were mailed to defendant at the same address.

The affidavit of reasonable diligence was executed by the process server, Mr. Warren, who attested to the following facts: On February 23, 2023, Warren attempted to serve defendant at his usual mailing address on Mission Boulevard. The UPS store employee would neither confirm nor deny that defendant held a box there. Warren did a "skip trace" and located the Wildwood property as a possible home address for defendant, and Warren's employee attempted to personally serve defendant there on February 24. On February 28, Warren returned to defendant's "Usual Place of Mailing" on Mission Boulevard and served defendant by substitute service, leaving copies of the documents with the store manager. And on March 1, copies of the documents were mailed to defendant.

A default prove-up hearing was scheduled for January 12, 2024 (the January 2024 hearing). The court issued a tentative ruling indicating it was

"inclined" to continue the hearing until April, to allow plaintiffs to re-serve defendant with the summons, complaint and related documents, and if defendant did not respond, to take default. In its tentative ruling, the court stated that it could not proceed to judgment without proof of service of process, and the record disclosed a potential defect as to plaintiffs' service, as well as a serious question whether defendant had actual notice of the proceedings. The court explained that plaintiffs had served defendant by substitute service at a private mailbox with a commercial mail receiving agency (CMRA), which was permissible only if that was the only address reasonably known for the defendant (citing § 415.20, subd.(c) (§ 415.20(c))), and the court did not have evidence to support that conclusion.

At the January 2024 hearing, plaintiffs appeared with counsel and defendant appeared in pro per. The court's minute order reflects that a Spanish interpreter also appeared at the hearing and provided interpretation for both plaintiffs and defendant. The order also shows that defendant was sworn and examined by the court, after which the court found that defendant *was* properly served and *was* in default. Accordingly, the court proceeded with the default prove-up hearing, which included testimony from each plaintiff. At the conclusion of the hearing, the court took the matter under submission. The record on appeal does not include a reporter's transcript of, or settled statement summarizing, the January 2024 hearing.

### *The Default Judgment*

On January 16, 2024, the court issued a four-page order (the January 2024 order). The first part of the January 2024 order pertained to defendant's default and then the court addressed plaintiffs' prove-up evidence.

6

### *Defendant's Default*

According to the January 2024 order, defendant appeared in pro per at the January 2024 hearing, was sworn and was permitted to testify solely "to explain why he had appeared and should be permitted to participate." Defendant testified that he learned about this case in December 2023 from an attorney, Ms. Varlack, who represented him in an unlawful detainer action that he filed against these plaintiffs several months prior. Defendant denied receiving the summons and complaint, but acknowledged he had been following this case and had visited the courthouse more than once to get more information about it.

During his testimony, defendant admitted he "maintained and received mail at the UPS Address for 15 years," and he could not explain why he had not received the summons, complaint, or other legal notices that were left with UPS staff and also mailed to his UPS address. When the court asked defendant to state his residential address, defendant "declined" to provide it. He also stated that he worked in construction and had no business address where he could be served.

After defendant completed his testimony, plaintiffs presented evidence regarding difficulties they had serving defendant in a civil harassment matter in late 2022. In that case, defendant declined to give the court his residential address, agreeing instead that the court and parties could serve him at the UPS address. Regarding the present case, in March 2023, plaintiffs' counsel provided a copy of the summons and complaint to attorney Varlack, who was at that time representing defendant in his unlawful detainer case against these plaintiffs, and requested that Varlack accept service on behalf of defendant.

The court concluded from the evidence that defendant's UPS address was the only address " 'reasonably known' " for the defendant, and that serving defendant via mail at the UPS store was proper. The court reasoned that defendant claimed not to have a business address; he "carefully guarded his home address, making it difficult if not impossible for him to be served personally or via substitute service"; and his counsel in the related unlawful detainer matter declined to accept service on defendant's behalf. The court emphasized that the "only contact information" defendant was willing to disclose to the court and plaintiffs was the UPS address. And the fact that defendant had provided the court and parties in the prior civil harassment case with the UPS address for purposes of accepting service showed that he was willing and preferred to accept service there, rather than at his home or business.

In addition, the court found, service of process was accomplished by a registered process server, and defendant had no affirmative evidence to rebut the process server's statements. (Citing Evid. Code, § 647 [return of registered process server establishes presumption of facts stated therein].) Finally, the court found that the evidence established defendant had actual knowledge of these proceedings "and did not diligently take steps to protect his own interests."

### *Plaintiffs' Prove-Up Evidence*

The court found that evidence presented at the January 2024 hearing supported plaintiffs' allegations regarding defendant's unlawful conduct and their resulting damages. Plaintiffs failed to prove their claimed medical expenses, the court found, but each plaintiff proved that defendant's conduct proximately caused him to lose "substantial and specific amounts of money and personal property"; to endure pain, suffering, and inconvenience; and to

8

suffer emotional distress.  In addition, plaintiffs were entitled to treble damages for demonstrated violations of Hayward's tenant protection ordinance.  As a landlord, defendant was on constructive notice his serious misconduct was unlawful and, indeed, any "person of common sense" would realize defendant's conduct was likely illegal, the court found.

The court also found from the evidence that defendant acted with oppression, fraud or malice; defendant's conduct could "fairly be characterized" as despicable, and was carried out with a willful disregard for plaintiffs' right to safety; and defendant subjected plaintiffs to cruel and unjust hardship in conscious disregard of their rights.  (Citing Civ. Code, § 3294, subds. (a), (c)(1) & (2).)  However, the court declined to award punitive damages because plaintiffs failed to present evidence of defendant's financial condition.

The court awarded each plaintiff damages against defendant, as follows:  Morales was awarded $184,200; Alvarez was awarded $105,300; Inocencio was awarded $105,300; and Martinez was awarded $50,200.  As to each award, the court specified amounts attributable to pain, suffering and inconvenience; emotional distress; breach of the warranty of habitability; and property damage/loss.  Property damages were excluded from the treble damages awarded pursuant to the Hayward ordinance.  The court also awarded attorney fees of $3,000 as to each plaintiff.

Judgment in favor of defendants was entered on January 18, 2024, and notice of entry of judgment was served on April 22.

### Motions to Set Aside the Judgment

In July 2024, defendant's counsel, Ms. Varlack, filed an ex parte application to set aside the judgment, which was denied without prejudice, followed by a formal motion to set aside the judgment pursuant to section

9

473(d). Defendant argued the judgment was void due to lack of jurisdiction because the summons and complaint were not properly served. In a declaration filed in support of this motion, defendant attested that, throughout these proceedings, he "continuously received" mail at his Wildwood property. Moreover, defendant asserted: "Plaintiffs were aware of my address because we all lived in the same house." According to defendant, plaintiffs caused the summons and complaint to be "purportedly served" at a UPS store, despite knowing it was not defendant's residence or usual place of business. Due to the allegedly improper service at "an address where I do not reside or conduct business," defendant attested, "I was not mailed a copy of the summons nor complaint and therefore did [not] respond in writing." Insisting that he "was not properly served ever," defendant stated that he was deprived of the opportunity to present his defense because "service at the UPS Store was not [his] usual place of abode or business."

Plaintiffs opposed defendant's motion, arguing his factual arguments were false or misleading and that the court had jurisdiction over him. Plaintiff Martinez submitted a declaration attesting that defendant did not reside at the Wildwood property at any point while Martinez was living there; defendant never disclosed where he resided; and Martinez never knew where defendant actually lived. According to Martinez, defendant would "show up" at the Wildwood property from time to time, "only to collect rent, harass the tenants, including myself, surveil us, and violate our tenants' rights." Plaintiffs also submitted a copy of a minute order from a July 2022 hearing in their civil harassment case against defendant, which confirmed that defendant had declined to provide his address in that case as well, and when the court asked defendant to provide his contact information, defendant provided his UPS address.

10

A hearing on the motion to set aside the judgment was set for October 31, 2024. The court issued a tentative ruling denying the motion, which was uncontested and subsequently adopted by the court. The October 2024 order summarizes the court's prior rulings, including that defendant's UPS mailbox was "the only address 'reasonably known' for defendant, and thus that service via that UPS address was proper, pursuant to Code of Civil Procedure section 415.20, subd. (c)." The order also affirms the court's prior finding that defendant had actual knowledge of this case and did not "act diligently to protect his own interests." The court added that defendant's counsel in this case and the unlawful detainer case had declined to accept service of the plaintiffs' summons and complaint. Finally, the court found that defendant's "own sworn testimony at the prove-up hearing . . . squarely contradicts the declaration he supplied in support of this motion." Because evidence presented at the prove-up hearing established that service was proper, the court "decline[d]" to set aside or vacate the default judgment.

## DISCUSSION

Defendant contends that the denial of his motion to vacate the judgment was reversible error for two independent reasons: (1) the judgment is void; and (2) defendant did not have actual notice of these proceedings in time to defend the action.

Our review of these claims is framed by a fundamental tenet of appellate review defendant apparently overlooks: The lower court's judgment is presumed to be correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) This means all intendments and presumptions will be indulged to support the judgment on matters as to which the record is silent, and error must be affirmatively shown. (*Ibid.*) It is the appellant's burden to present meaningful legal analysis supported by citations to authority and facts in the

11

record that support the claim of error. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) The appellant also bears the burden of providing an adequate record to demonstrate the alleged error. " ' "Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]." ' " (*People v. Accredited Surety & Casualty Co.* (2019) 34 Cal.App.5th 891, 900.)

## I. Defendant Fails to Show the Judgment Is Void

Pursuant to section 473(d), the trial court "may, on motion of either party after notice to the other party, set aside any void judgment or order." An appeal based on section 473(d) implicates two potential issues: whether the judgment is void, a matter that is subject to de novo review; and, if the judgment is void, whether the court abused its discretion in setting it aside. (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020–1021.) We confine our discussion to the first issue, as defendant fails to show the judgment is void.

Defendant contends the judgment is void because he was not properly served with the summons and complaint. A default judgment "entered against a defendant who was not served with a summons in the manner prescribed by statute" is void because "compliance with the statutory procedures for service of process is essential to establish personal jurisdiction." (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1444 (*Dill*).) In the present case, however, evidence before the trial court established that defendant was served in compliance with the statutory procedure for service of process set forth in sections 415.20(b) and (c).

As pertinent here, section 415.20(b) provides that when a copy of the summons and complaint cannot "with reasonable diligence" be personally delivered to the party, the summons may be served by leaving the documents

12

at the person's usual mailing address, in the presence of a person over 18 who is apparently in charge of the usual mailing address, and by thereafter mailing copies of the documents to the person to be served at the place where the documents were left. (§ 415.20(b).) And under section 415.20(c), when "the only address reasonably known for the person to be served is a private mailbox obtained through a [CMRA], service of process may be effected on the first delivery attempt by leaving a copy of the summons and complaint with the [CMRA] in the manner described in subdivision (d) of Section 17538.5 of the Business and Professions Code."

In the present case, evidence presented at the January 2024 hearing, including defendant's own sworn testimony, established that defendant's UPS mailbox was not only his usual mailing address (§ 415.20(b)), it was also the only address reasonably known for defendant (§ 415.20(c)). Moreover, service of process was accomplished by a registered process server who attested that after copies of the summons and complaint were left with the CMRA (in accordance with section 415.20(c)), they were mailed to defendant's UPS address (in accordance with § 415.20(b)). Defendant proffered no evidence to rebut the process server's statements. (See Evid. Code, § 647.) Under these facts, the court properly found that "mail service at that address [was] valid."

Defendant contends that even if his UPS mailbox was his only reasonably known address, plaintiffs' service was defective because the superior court clerk entered the default before plaintiffs' affidavit of reasonable diligence was "on file" with the court. According to defendant, (1) a declaration showing that the party serving process attempted with reasonable diligence to personally serve the other party is always required before any other form of service is permitted; and (2) if a diligence declaration

13

is not filed prior to the clerk's entry of default, the judgment must be deemed void for lack of jurisdiction. Both prongs of this argument fail.

First, defendant fails to support his broad thesis that substitute service is permissible *only* after the plaintiff shows via an affidavit that reasonably diligent attempts to personally serve the defendant were actually made and proved unsuccessful. Courts have found that " '[o]rdinarily, . . . two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence' " set forth in section 415.20(b). (*Bein v. Brechtel-Jochim Group, Inc.* (1992) 6 Cal.App.4th 1387, 1391; see also *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1202.) But defendant fails to acknowledge that section 415.20(c) applies "notwithstanding subdivision (b)." Section 415.20(c)'s plain language provides that a party may show that personal delivery of the summons and complaint cannot be accomplished with reasonable diligence by demonstrating that a private commercial mailbox is the only reasonably known address for the person to be served, and if that requirement is met, service may be effected upon "the first delivery." (*Ibid*.) Here, the process server's declaration, along with plaintiffs' other evidence and defendant's own sworn testimony, supports the trial court's express finding that defendant's UPS mailbox was the only reasonably known address for defendant. (Compare *Batte v. Bandy* (1958) 165 Cal.App.2d 527, 534 [affidavit containing *no facts* to demonstrate due diligence insufficient to justify substitute service]; *Eagle Electric Mfg. Co. v. Keener* (1966) 247 Cal.App.2d 246, 252 [same].)

The jurisdictional prong of defendant's argument is equally flawed. Defendant relies on the principle that a default judgment entered absent valid service of process creates a jurisdictional defect. (*California Capital Insurance Company v. Hoehn* (2024) 17 Cal.5th 207; see also *Kremerman v.*

14

*White* (2021) 71 Cal.App.5th 358, 371 (*Kremerman*) [" 'default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void' "].) But he fails to show a jurisdictional defect occurred here.

Defendant contends that the superior court clerk committed a critical error by entering default before plaintiffs filed the process server's affidavit of diligence, and that this alleged defect was jurisdictional. Defendant cites no authority supporting this argument. He mistakenly relies on *Renoir v. Redstar Corp.* (2024) 123 Cal.App.4th 1145, which is inapposite because in that case a summons was never issued or served. (*Id.* at pp. 1148, 1154.)[1] The record does not disclose the date on which default was entered. But even if the clerk made a procedural misstep by entering default before plaintiffs filed their proofs of service and process server's affidavit, the evidence establishing that defendant was properly served under section 415.20(b) and (c) was part of the superior court file before the default *judgment* was entered.

Defendant overlooks that the trial court rejected plaintiffs' first request for a default judgment, requiring them to refile that request and any additional evidence, all of which was before the court when it subsequently ruled that defendant had been properly served and defaulted. Defendant cites no authority holding that the clerk's entry of default before proof of

---

[1] Defendant also relies on Superior Court of Alameda County, Local Rules, rule 3.30, contending that it "mandates that a declaration or affidavit of diligence be filed concurrently with any proof of substituted service." Since rule 3.30 says no such thing, we assume defendant meant to cite rule 3.50, which pertains to the method of establishing reasonable diligence under section 415.20(b) by documenting unsuccessful attempts at personal delivery. Rule 3.50 does not address section 415.20(c). Nor does it *mandate* that an affidavit of diligence be filed concurrently with any proof of service.

service has been filed precludes the court from obtaining jurisdiction over a party who was properly served with the summons and complaint *prior to entry of default*. (See § 410.50(a) ["Except as otherwise provided by statute, the court in which an action is pending has jurisdiction over a party from the time summons is served on him"].)

Finally, defendant contends that even if service under section 415.20(c) was permissible in this case, it was defective because plaintiffs failed to show compliance with Business and Professions Code section 17538.5, subdivision (d) (section 17538.5(d)). Code of Civil Procedure section 415.20(c) provides that service of process may be effected on the first delivery attempt by leaving a copy of the summons and complaint with the CMRA "in the manner described" in section 17538.5(d). Defendant assumes this means that the serving party must establish that statutory requirements contained in section 17538.5(d) have been satisfied before the trial court can obtain personal jurisdiction over a party who was otherwise properly served under section 415.20(b) and (c). We are not persuaded by defendant's cursory argument.

Business and Professions Code section 17538.5 is a consumer protection law, not a service statute. It generally prohibits businesses that sell consumer goods or services via a CMRA from failing to disclose the legal name and actual address of their business, and it imposes various related obligations on the business and the CMRA. (*Ibid*.) Pertinent here, subdivision (d) requires the CMRA to act as the business customer's agent for service of process and, upon "receipt of any process," to send copies of the documents to the customer in a specified manner within a specified time. The obligations set forth in section 17538.5(d) fall exclusively on the CMRA and persons receiving private mailbox services from them. Defendant points

16

to no language in section 17538.5(d) that imposes any obligation on the serving party, including no obligation to prove that the CMRA subsequently performed its duties as an agent for service of process. (Cf. *Dill*, *supra*, 24 Cal.App.4th at p. 1442 [statutory requirements for proving summons was served by mail on person outside the state include evidence establishing " 'actual delivery to the person to be served' "].)

Moreover, defendant's characterization of section 17538.5(d) as a jurisdictional statute is not supported by his citation to *Kremerman*, *supra*, 71 Cal.App.5th 358. In that case, a landlord filed a complaint against his former tenant (White), seeking, among other things, to recover damages resulting from White's alleged breach of the lease by vacating plaintiff's property in Studio City before the lease expired in order to move into a home she purchased in Woodland Hills. (*Id*. at pp. 363, 364.) After multiple defective and unsuccessful attempts to serve White, the plaintiff obtained a default judgment based on a proof of service which stated that the process server left a copy of the summons and complaint with " 'a competent member of the household . . . at the dwelling house or usual place of abode of the party,' " and identified the person served as an employee of a PostalAnnex where White had a private mailbox. (*Id*. at p. 365.) The trial court denied White's motion to vacate the judgment, but that ruling was reversed on appeal. (*Id*. at p. 371.)

Concluding that the *Kremerman* plaintiff failed to comply with statutory procedure for service of process, the appellate court found that the requirements for substitute service under section 415.20(b) were not met because, among other things, the plaintiff failed to show reasonable diligence in his attempts to personally serve White, and undisputed evidence established that the PostalAnnex was not White's household or usual place of

17

abode, nor was its employee a competent member of White's household. (*Kremerman*, *supra*, 71 Cal.App.5th at pp. 372–373.) Furthermore, the court found, plaintiff did not comply with section 415.20(c) because a private mailbox obtained through a CMRA was *not* the only address reasonably known for White; undisputed evidence established the plaintiff's knowledge of White's home address. (*Id.* at p. 373.) Finally, the court observed that section 17538.5(d) requires the CMRA to place a notice or copies of the documents in the customer's mailbox within 48 hours and to mail the documents to its customer's address within five days after receipt, and evidence before the trial court showed the second requirement was not met, as the CMRA employee attested that she mailed the documents to White's mailbox 20 days after receipt. (*Kremerman*, at pp. 373–374, see also *id.* at p. 368.) Under these facts, the *Kremerman* court concluded the judgment was void. (*Id.* at p. 374.)

In contrast to *Kremerman*, the record in this case shows that plaintiffs' method of substitute service was proper because defendant's UPS mailbox was his usual mailing address (§ 415.20(b)) and it was also his only reasonably known address (§ 415.20(c)). The *Kremerman* court also assumed that statutory requirements set forth in section 17538.5(d) should also be considered, but in that case the record showed that the CMRA had not complied with those requirements. Here, by contrast, nothing in the record indicates that UPS failed to comply with its obligations as defendant's agent for service of process. These plaintiffs showed they complied with the statutory procedure for effecting service pursuant to section 415.20(b) and (c), which created a rebuttable presumption that service was proper. (*Dill*, *supra*, 24 Cal.App.4th at pp. 1441–1442.) Absent any evidence rebutting that presumption, we need not consider whether a demonstrated violation of the

18

CMRA's obligations under section 17538.5(d) would impede the court's ability to exercise personal jurisdiction over a party served in accordance with section 415.20(b) and (c).[2]

## II. Defendant Fails to Show Any Abuse of Discretion

Defendant contends that even if the judgment is not void, the trial court abused its discretion under section 473.5 by refusing to set aside the default judgment despite defendant's showing that he promptly came forward to seek relief after obtaining actual notice of this action.

Section 473.5, subdivision (a) provides: "When service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against the party in the action, the party may serve and file a notice of motion to set aside the default or default judgment and for leave to defend the action." Section 473.5, subdivision (c) permits the court to set aside the default judgment if it finds "the party's lack of actual notice in time to defend the action was not caused by the party's avoidance of service or inexcusable neglect." We review the court's findings regarding actual notice of the action for an abuse of discretion. (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 547.)

Defendant argues the trial court abused its discretion in three ways.[3] First, he contends the court erred by inferring defendant had actual notice of

___

[2] In his reply brief, defendant contends that federal courts construing California law require proof that the CMRA complied with section 17538.5(d), in order to establish effective service under section 415.20(c). This contention is not justified by defendant's citation to *Painaway Austl. Pty ACN 151 146 977 v. Natures Invs. Pty Ltd.* (N.D. Cal. 2016) 2016 U.S. Dist. Lexis 9091. The *Painaway* court did not construe or even mention section 415.20(c) or section 17538.5(d).

[3] In his reply brief, defendant argues he is also entitled to equitable relief for mistake, citing *Rappleyea v. Campbell* (1994) 8 Cal.4th 975

19

this case from evidence that plaintiffs attempted to serve the summons and complaint on Ms. Varlack, the attorney who was representing defendant in a different case. This was error, defendant contends, because section 473.5 requires "personal notice to the party," not indirect notice to an attorney who is not actively representing the party in the specific action. (Citing *Rosenthal v. Garner* (1983) 142 Cal.App.3d 891, 897; see *id.* at p. 895 [" 'actual notice' means genuine knowledge of the party litigant and does not contemplate notice imputed to a principal from an attorney's actual notice"].)

This argument fails because the trial court's actual notice finding was not based on an inference. Defendant himself admitted that he knew about this case because Varlack told him about it. Plaintiffs' attempt to serve Varlack was relevant for a different reason: the fact that defendant's attorney refused to accept service was one of several circumstances that established defendant's UPS mailbox was the only reasonably known address for serving defendant. The court did not use that attempted service to infer that defendant had personal knowledge of this case. Defendant's own testimony at the January 2024 hearing established he had actual notice of the proceedings and failed to act diligently to protect his own interests. As the court observed in its January 2024 order after hearing, defendant admitted under oath that he knew about this case; that he had been monitoring it; and that he obtained information about it from the superior court. (*Ibid.*)

Next, defendant contends the declaration he filed in support of his motion to set aside the judgment proves he did not "learn of the case until

(*Rappleyea*) and his limited English proficiency. We needn't address this untimely argument, raised for the first time in a reply brief. (*Ione Valley Land, Air, & Water Defense Alliance, LLC v. County of Amador* (2019) 33 Cal.App.5th 165, 173.)

December 2023, when he was served with a trial subpoena," and that he promptly appeared in court thereafter "to try to defend himself." The declaration we find in this record does not address when or how defendant learned about this case. Moreover, the trial court found that defendant's declaration did not entitle him to relief from default because it contradicted his sworn testimony at the January 2024 hearing. Defendant fails to prove otherwise, and does not even supply a reporter's transcript or settled statement from the January 2024 hearing. In his reply brief, defendant argues that the adverse finding as to his credibility must be set aside because it is not supported by the record. However, as defendant's cited authority confirms, "[i]t is the province of the trial court to determine the credibility of the declarants." (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 828.)

Finally, defendant contends the trial court abused its discretion because it abandoned its role as a "neutral gatekeeper" by relying on defendant's January 2024 hearing testimony notwithstanding that he was a defaulted, self-represented litigant. Defendant's contention that the court was biased against him is not supported by the record. Furthermore, under the law, defendant had the right to act as his own attorney and, having made that choice, was entitled to the same, but no greater consideration than other litigants and attorneys. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247; see also *Rappleyea*, *supra*, 8 Cal.4th at p. 984 ["mere self-representation is not a ground for exceptionally lenient treatment"].)

Defendant asserts that "California law makes clear that a court cannot treat a self-represented litigant's unsworn statements—elicited at a prove-up hearing after default—as binding judicial admissions or competent evidence." (Boldface omitted.) Not for the first time in this court, defendant relies on a proposition without citing authority for it, but in any event, the statements

defendant made at the January 2024 hearing were not unsworn.  Nor were they elicited during the prove-up portion of the proceeding.

Ultimately, defendant fails to show the judgment is void or that the court abused its discretion in concluding defendant had actual notice of these proceedings and failed diligently to take steps to protect his own interests.

## DISPOSITION

The judgment is affirmed.  Costs are awarded to respondents.

TUCHER, P. J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*Alvarez et al. v. Ramirez* (A172234)